## 50643. CLARE v. THE STATE.

CLARK, Judge.

Via certificate of immediate review, this court is asked to determine the validity of a warrantless search conducted against defendant's residence. Subsequently, search warrants directed at defendant's residence and car were procured, being based entirely upon information gathered during the initial intrusion. Marijuana was seized on the second search and defendant was indicted for a possessory violation under the Georgia Controlled Substances Act. Appeal is taken from the overruling of defendant's motion to suppress the seized narcotics.

The state's sole witness at the suppression hearing was the police officer. He testified as follows: On October 13, 1974 at approximately 2:25 a.m., he received a call concerning a loud disturbance at 903 Cherry Street. The complainant, a woman visiting her mother in a downstairs apartment of the house, met the officer upon his arrival and informed him that persons occupying the second-floor apartment had been playing their stereo at a loud volume for nearly an hour. The officer proceeded to the building's outside doorway, used exclusively for entry to defendant's upper apartment. After knocking several times, he was greeted by defendant, who opened the door. Defendant asked "what the problem was," and the officer responded that his stereo was creating a disturbance. While the door was open, the officer heard a "shuffling" noise (". . . it sounded like someone running into a chair or moving it across the floor.") and, without asking

permission to enter, walked up the flight of stairs leading to defendant's living room.

The officer also testified that he smelled marijuana when defendant opened the door. This was not the basis for his entry as he stated that his reason for entering the apartment was to "investigate the noises" and to "make an arrest for disorderly house." After observing marijuana in various rooms of defendant's apartment, the officer obtained search warrants for the premises and for defendant's automobile. The marijuana was seized during the subsequent search pursuant to the warrant.

The sole witness for the defense was the occupant of a first-floor apartment under defendant's premises. She stated that she was sleeping at the time of the alleged disturbance, that she did not hear the stereo or any scuffling noises and that she was awakened only by the footsteps of policemen when they arrested defendant along with other persons in his apartment. *Held:*

1. Was the officer's entry into the premises justified by his decision to effectuate an arrest for maintaining a disorderly house? Code Ann. § 26-2614 provides that, "A person who keeps and maintains, either by himself or others, a common, ill-governed, and disorderly house, to the encouragement of gaming, drinking or other misbehavior, or to the common disturbance of the neighborhood or orderly citizens, is guilty of a misdemeanor." In order for a person to be charged with this offense, "the noise or disorder must not disturb one person only in a thick or populous neighborhood; it must disturb it generally, or it cannot be said of it to have been to the common disturbance of the neighborhood or orderly citizens." *Palfus v. State,* 36 Ga. 280, 285. Additionally, *Palfus* at page 285 held that this offense applies to "only such houses wherein loud noises, cursing, swearing, &c., were ordinary and usual, or common occurrences; not casual and at long intervals, but were the general, customary, common habits of the house." "Not only must the [noise] be of that quality but it must exist 'for a sufficient length of time to render applicable to it as a disorderly house the descriptive term "common," and that the noises made and improper acts committed therein disturbed the peace and comfort of quite a number of

orderly citizens in the neighborhood.' [Cit.]" *Brewer v. State,* 129 Ga. App. 118, 120 (199 SE2d 109).

The circumstances of this case are insufficient to warrant an arrest under the statute. The only person shown to be disturbed by defendant's stereo was the complainant, who informed the officer that the noise had been maintained for a period of less than one hour. Another resident of defendant's apartment building stated that she did not hear the stereo at all. The "shuffling" noise was heard by the officer only after defendant had opened the door leading into his apartment. This sound, which the officer thought was caused by the moving of a chair, was neither so loud nor so suspicious as to be indicative of criminal activity nor such as to justify an arrest or further investigation. We therefore conclude that the disorderly house statute offered no basis for the officer's warrantless intrusion of defendant's apartment.

2. Did the officer possess probable cause to believe that marijuana was present in defendant's apartment? While the officer testified that he smelled marijuana when defendant opened the door, he qualified this statement in the following manner: "Q. You thought it might be marijuana, but you weren't sure, were you? A. No. Q. Then you were going in to investigate the noises, is that correct? A. Yes Sir. . . Q. All right. So you had not at that time before entering identified it as a marijuana odor before entering the apartment, right? A. No Sir." (T. 17, 20).

"The odor of marijuana smoke is not, in and of itself, sufficient to afford probable cause for a warrantless search, but it may be considered and may be a part of a totality of circumstances sufficient to validate one. [Cits.] *Yawn v. State,* 134 Ga. App. 77, 78 (213 SE2d 178). See also Johnson v. United States, 333 U. S. 10, 13 (68 SC 367, 92 LE 436), wherein the court held that while "odors alone do not authorize a search without warrant," a "sufficiently distinctive" odor recognized by one "qualified to know the odor" may form a proper basis for the issuance of a search warrant. In the absence of any other circumstances tending to show the presence of marijuana, the officer's statements reveal only a

suspicion that drugs were being used insufficient to constitute probable cause.

Of significance in the judicial determination of probable cause is the totality of circumstances as viewed from the perspective of an experienced and trained law enforcement officer. In the instant case, it is obvious that the officer concluded that his suspicion of marijuana odor was not so strong as to form the basis for his entry. In response to questions concerning his reason for entering the apartment, the officer consistently responded that his purpose was to investigate the noises and make an arrest for disorderly house. (T. 5, 6, 16, 17.) We may infer from this that the officer at that time had made no determination of probable cause on the basis of his olfactory senses. The subsequent search and seizure cannot now be validated by suspicions or beliefs which the officer did not entertain at the time of his warrantless intrusion. "Monday morning quarterbacking" is not available under such situation. See *Stanley v. State,* 129 Ga. App. 759 (201 SE2d 182).

Even if we are to assume the existence of probable cause under the circumstances here presented, the state has failed to offer any explanation for its noncompliance with the warrant procedure. It is elementary that probable cause, however well founded, can provide no justification for a warrantless intrusion of a person's home absent a showing "that the exigencies of the situation made that course imperative." Coolidge v. New Hampshire, 403 U. S. 443, 455 (91 SC 2022, 29 LE2d 564); Warden v. Hayden, 387 U. S. 294 (87 SC 1642, 18 LE2d 782); McDonald v. United States, 335 U. S. 451 (69 SC 191, 93 LE 153). The state has not met its burden of demonstrating the presence of exigent circumstances and we can find nothing which might justify the officer's failure to seek a warrant under the facts of this case.

3. The final argument advanced by the state in support of the search is that the defendant gave his "implied consent" for the officer to enter his apartment. "When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, *in fact,* freely and voluntarily given." (Emphasis supplied.) Bumper v. North Carolina,

391 U. S. 543, 548 (88 SC 1788, 20 LE2d 797). At no point did the officer ask the defendant herein if he could enter the apartment. The officer described his entry as follows: "A. After he finally opened the door he asked, 'what was wrong, Officer' and I told him his neighbors were complaining about the noise and at that time I could hear the noise I described before [referring to the shuffling sound] and he heard it also and turned and I went in. Q. He just turned and you went right on in? A. Yes Sir. . . Q. At that point you were entering the building, right? A. Yes Sir." (T. 16).

Since the officer never sought defendant's permission to enter the apartment, we are unable to discern how defendant could possibly have consented to the intrusion. The notion of "implied consent" advanced in support of this search has no basis within the context of Fourth Amendment rights. We therefore conclude that the state has failed to meet its burden of showing that consent for the search was in fact given.

4. It is well established "that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U. S. 347, 357 (88 SC 507, 19 LE2d 576). The state has not demonstrated that the search was conducted under any exception to the warrant requirement. Nor was the search shown to have been necessitated by exigent circumstances. See Johnson v. United States, supra, at page 15. We therefore conclude that the search was an unreasonable one and that the trial court erred in overruling defendant's motion to suppress the illegally-seized drugs.

5. The search warrants directed against defendant's apartment and car were based upon the information derived from the officer's previous illegal entry.[1] Since the

---

[1]Although the affidavit supporting the warrant also described the "strong odor beleived [sic] to be Marjuana [sic]," probable cause cannot be based upon this suspicion alone, for the reasons expressed in Division 2 of this opinion.

information supporting the warrants cannot be traced to "an independent and lawful source," the fruits of these searches were tainted by the prior illegality and must be suppressed. Silverthorne Lumber Co. v. United States, 251 U. S. 385, 392 (40 SC 182, 64 LE 319); Wong Sun v. United States, 371 U. S. 471 (83 SC 407, 9 LE 441); *Morrison v. State,* 129 Ga. App. 558 (200 SE2d 286).

*Judgment reversed. Pannell, P. J., and Quillian, J., concur.*

ARGUED MAY 8, 1975 — DECIDED JULY 1, 1975.

*Nunn, Geiger, Rampey, Buice & Harrington, D. L. Rampey, Jr.,* for appellant.

*Fred M. Hasty, District Attorney, Walker P. Johnson, Jr., Assistant District Attorney,* for appellee.