### A11A2202. CANINO v. THE STATE.

(725 SE2d 782)

DOYLE, Presiding Judge.

Raul Canino was charged with reckless driving[1] and possession of cocaine with the intent to distribute.[2] This appeal arises from this Court's grant of Canino's application for interlocutory review of the denial of his motion to suppress evidence obtained from his car following his arrest for reckless driving. Canino argues that the trial court erred because (1) the police did not have probable cause to arrest him for reckless driving; (2) the search of his vehicle incident to his arrest was improper; and (3) the search of his car pursuant to an inventory search was improper. We reverse, for reasons that follow.

When reviewing a trial court's order on a motion to suppress,

> the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them]. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the

---

[1] OCGA § 40-6-390 (a).
[2] OCGA § 16-13-30 (b).

reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.[3]

So construed, the evidence shows that on August 19, 2008, at approximately 5:00 or 6:00 p.m., Officer Terry Werho of the Gwinnett County Police Department, along with three other officers, was in a shopping center walking toward a restaurant where they planned to have dinner. As he walked through the parking lot, Werho observed Canino's black BMW enter the parking lot, "accelerating at a high rate of speed, making turns through the aisles recklessly," and causing the tires to squeal on the pavement and the body of the vehicle to "sway to the passenger side" as it turned. Another officer, Kevin Sipple, testified that Canino's car "fish-tail[ed]" and came within ten feet of Sipple. Canino parked in a marked parking spot near the four patrol cars and exited his vehicle.

All four officers approached Canino, and Werho "[a]sked him why he was driving so recklessly" and for his identification. Canino replied that he was meeting someone inside the restaurant, and he produced two traffic citations, one for a traffic offense and one for driving under the influence, explaining that his driver's license had been confiscated by DeKalb County police and that his name and birth date were on the citations. At some point during this initial contact, Werho directed Canino to sit in his vehicle, and Canino complied. Werho checked Canino's information through the Georgia Crime Information Center (GCIC), which indicated that Canino did in fact have a driver's license.[4] Another officer was in a patrol car with Werho during the GCIC inquiry, and the other two officers remained standing "a few feet" behind Canino's car where he was sitting pursuant to the officer's instruction.

Werho then returned to Canino, asked him to exit his car, and told him that he was under arrest for reckless driving. Canino complied, and Werho placed him in handcuffs while Canino was pressed face-first against the driver's side of his car, slightly behind the open driver's door and against the seat pillar. Another officer — Corporal Marion — began searching Canino's car. At the initial suppression hearing, Werho testified that the search and the handcuffing were "almost simultaneous" and stated that "I can't tell you if [the search began] before handcuffs were completely on him, but it was after I informed him he was under arrest and before I finished the search of his person." According to Werho, Marion searched the

---

[3] (Citations, punctuation and emphasis omitted.) *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

[4] Werho could not remember whether Canino's license was valid or suspended.

car from the passenger's side. Marion testified that Canino was already in handcuffs before he began searching the vehicle from the driver's side of the car. After Canino was secured in handcuffs, Marion found a plastic bag, which contained a white powdery substance, in the gap between the driver's seat and the center console; a narcotics field test of the substance indicated that it was positive for drugs.[5]

Canino's vehicle was impounded following his arrest for reckless driving and possession of cocaine with intent to distribute. At some point during the incident, two women approached, and one of them told police that she knew Canino. Canino's car was legally parked and did not constitute a hazard, and the property owner/manager did not request removal of the vehicle. The officers did not give Canino the opportunity to have a friend or family member remove his vehicle from the parking lot in lieu of impoundment, nor did they ask him if he wanted to make alternative arrangements for the car, despite the presence of the woman on the scene and the friends he was meeting in the restaurant.

Police officers involved in Canino's arrest testified at a probable cause hearing on October 1, 2008; a bond hearing on November 7, 2008; and a second bond hearing on January 7, 2009. The court then held a hearing on Canino's motion to suppress on July 1, 2009, at which time Officer Werho testified that the search of Canino's car was conducted incident to his arrest, and he specifically denied that the search was an inventory search. The following year, before the trial court ruled on the motion to suppress, the State filed a motion to reopen the evidence, explaining that it had evaluated the search in this case in consideration of the recent United States Supreme Court decision of *Arizona v. Gant*,[6] which was decided on April 21, 2009, and which held that police are authorized "to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search"[7] or "when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle."[8]

In March 2010, the Supreme Court of Georgia held that even if a search of a vehicle subsequent to an arrest was invalid under *Gant*, evidence could be admissible under the inevitable discovery rule if

---

[5] Marion weighed the package at the scene, and it weighed 29.6 grams including the plastic bag.

[6] 556 U. S. 332 (129 SC 1710, 173 LE2d 485) (2009). We discuss the *Gant* decision in detail in Division 2, infra.

[7] Id. at 343 (III).

[8] (Punctuation omitted.) Id.

the State proves that the evidence seized from the vehicle would have been properly discovered during the subsequent inventory of the vehicle.[9] Thus, the State sought to introduce evidence at a second motion to suppress hearing to establish that the impound of Canino's vehicle was proper and would have resulted in the discovery of the cocaine.

The trial court granted the motion for a second hearing, at which Werho testified that the police conducted (1) a search of Canino's car incident to arrest and (2) a subsequent impound inventory search based on Canino's arrest and the drugs found in his vehicle. Marion testified at the same hearing that his search of Canino's car was an impound inventory search.

After the hearing, the trial court denied Canino's motion to suppress, concluding in a detailed order that Canino's arrest for reckless driving was authorized; the subsequent search of his vehicle was an authorized search incident to arrest under *Gant*; and the impoundment of his car was lawful and would have led to the inevitable discovery of the cocaine. This interlocutory appeal followed.

1. Canino argues that the police did not have probable cause to arrest him for reckless driving, and therefore, the trial court erred by failing to suppress the evidence seized subsequent to his arrest. This enumeration is without merit.

OCGA § 40-6-390 (a) defines reckless driving as driving "in reckless disregard for the safety of persons or property." Canino argues that although he may have been speeding, there is no evidence that his actions threatened the safety of persons or property. The officers, however, testified that Canino accelerated through the busy shopping center parking lot at a high rate of speed; made reckless turns, causing his tires to squeal and his vehicle to fish-tail; did not have control of the car; and came within ten to fifteen feet of striking the officers while he drove. Another officer, Kevin Sipple, testified that Canino "came pretty close to striking Sergeant Hart and [me]," and there were people walking through the parking lot. Under these circumstances, the trial court was authorized to conclude that the officers had a basis for stopping and arresting Canino for reckless driving.[10]

---

[9] See *Humphreys v. State*, 287 Ga. 63, 76-77 (7) (694 SE2d 316) (2010).

[10] See OCGA § 40-6-3 (a) (2) (providing that the Uniform Rules of the Road "shall apply to a vehicle operated at shopping centers or parking lots or similar areas which although privately owned, are customarily used by the public as through streets or connector streets."). See also *Patton v. State*, 287 Ga. App. 18, 21 (650 SE2d 733) (2007) (arrest for reckless driving authorized because the defendant sped through a congested parking lot and on a highway); *Swearingen v. State*, 255 Ga. App. 85, 86 (1) (564 SE2d 498) (2002) (traffic stop authorized based on evidence that the defendant was weaving and speeding through a pedestrian-filled

In support of this enumeration, Canino relies on the testimony of Don Shaver, an engineer and reconstruction expert, who testified at the initial suppression hearing that he attempted to replicate Canino's actions in the parking lot, and his testing and observation of the parking lot led him to conclude that Canino was in control of his vehicle and that he could not have operated his vehicle in the manner described by the officers. The trial court, however, resolves all evidentiary conflicts, and its "decision on questions of fact and credibility at a suppression hearing must be accepted unless clearly erroneous."[11]

2. Next, Canino argues that the trial court erred by denying his suppression motion because the search of his vehicle incident to his arrest was improper. We agree.

In *New York v. Belton*,[12] the United States Supreme Court held that when a police officer "has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile [and] . . . the contents of any containers found within the passenger compartment."[13] That holding was based, in part, upon the Court's assumption "that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within 'the area into which an arrestee might reach.' "[14]

Thereafter, the *Belton* decision became "widely understood to allow a vehicle search incident to the arrest of a recent occupant even if there is no possibility the arrestee could gain access to the vehicle at the time of the search," so the Supreme Court clarified the issue in *Arizona v. Gant*.[15] Gant was arrested for driving on a suspended license.[16] After he was handcuffed and secured in a patrol car, two of the five officers on the scene searched Gant's vehicle and found a gun and a bag of cocaine.[17] The Supreme Court concluded that the search of Gant's vehicle was unreasonable because "police could not reasonably have believed either that Gant could have accessed his car at the time of the search or that evidence of the offense for which he was arrested might have been found therein."[18] The Court stated

---

mall parking lot).
    [11] (Punctuation omitted.) *Silverio v. State*, 306 Ga. App. 438, 447 (4) (702 SE2d 717) (2010).
    [12] 453 U. S. 454 (101 SC 2860, 69 LE2d 768) (1981).
    [13] Id. at 460 (II).
    [14] Id., citing *Chimel v. California*, 395 U. S. 752, 763 (89 SC 2034, 23 LE2d 685) (1969).
    [15] 556 U. S. at 341 (III).
    [16] See id. at 336 (I).
    [17] See id.
    [18] Id. at 344 (III).

that "to allow vehicle searches incident to any arrest would serve no purpose except to provide a police entitlement, and it is anathema to the Fourth Amendment to permit a warrantless search on that basis."[19] Therefore, the Court held, police are authorized "to search a vehicle incident to a recent occupant's arrest only when the *arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search,*"[20] or if police reasonably believe that evidence of the offense for which the occupant was arrested might be found therein.[21] The Court explained that "[b]ecause officers have many means of ensuring the safe arrest of vehicle occupants, it will be the rare case in which an officer is unable to fully effectuate an arrest so that a real possibility of access to the arrestee's vehicle remains."[22]

In *Boykins v. State*,[23] the Supreme Court of Georgia reversed the denial of a defendant's motion to suppress evidence of drugs because the search of his vehicle was not a proper search incident to arrest under *Gant*.[24] In that case, the evidence showed that Boykins, who was arrested on an outstanding probation warrant, exited his vehicle while being initially questioned, and he was then arrested, handcuffed, and placed in the patrol car.[25] Because the State failed to present evidence regarding Boykins's physical location at the time of the search, the Court held that "the State failed to make any meaningful showing that this was the 'rare' case justifying a warrantless vehicle search because officers were unable to fully effectuate an arrest."[26]

In the instant case, the State does not contend that the police believed that there was evidence in Canino's car related to his arrest. Instead, we must decide whether the State met its burden of proving that Canino was "unsecured and within reaching distance of the passenger compartment at the time of the search."[27]

Four officers were present on the scene, and Canino, who previously had been arrested only for a misdemeanor traffic offense, was fully compliant with the officers' commands. Based on the facts

---

[19] Id. at 347 (IV).

[20] (Emphasis supplied.) Id. at 343 (III).

[21] See id. at 343 (III).

[22] Id. at 343, n. 4.

[23] 290 Ga. 71 (717 SE2d 474) (2011).

[24] See id. at 72 (2).

[25] See id. at 71 (1), 72 (2).

[26] Id. at 72 (2).

[27] *Gant*, 556 U. S. at 343 (III). See also *Holsey v. State*, 306 Ga. App. 75, 77 (1) (701 SE2d 538) (2010) ("[T]he State bore the burden of proving that [the defendant] was within reaching distance of his vehicle's passenger compartment at the time of the search in order to assert that this was a proper search incident to arrest under the first prong of the *Gant* holding.").

of this particular case, we conclude that although Canino was in close proximity to the interior of his vehicle, if he was in handcuffs during the search, it was an improper search incident to arrest under *Gant* and *Boykins*.[28] In its order, the trial court concluded that "it is unclear whether the defendant was handcuffed or not when the search commenced. . . ."[29] Further, the State concedes on appeal that "[i]t is not clear from the evidence if [Canino] was handcuffed at the time the suspected cocaine was located."[30] As the record demonstrates, the State failed to prove that Canino was free of handcuffs and otherwise unsecured at the time the search began such "that this was the 'rare' case justifying a warrantless vehicle search because officers were unable to fully effectuate an arrest."[31] The State "therefore cannot argue that the search was justified based on [Canino's] ability to access the passenger compartment of his vehicle at the time of the search."[32]

3. Canino also argues that the officers' purported impound inventory search of his vehicle was invalid. Again, we agree.

> In the interests of public safety and as part of what the Court has called "community caretaking functions," automobiles are frequently taken into police custody. The police may inventory the contents of a vehicle that has been lawfully impounded, but they may not use an impoundment

---

[28] We reject the State's contention that *Gant* is inapplicable to this case because it was decided nine months after the search of Canino's vehicle. The State relies on *Davis v. United States*, ___ U. S. ___ (131 SC 2419, 180 LE2d 285) (2011), in which the Supreme Court held that *Gant* should not be applied retroactively if the officers were adhering, in good faith, to binding legal precedent when conducting their search. The Supreme Court of Georgia, however, recognizing that a state has "power to impose higher standards on searches and seizures than required by the Federal Constitution if it chooses to do so," has held that the good-faith exception to the exclusionary rule "is not applicable in Georgia in light of our legislatively-mandated exclusionary rule found in OCGA § 17-5-30." *Gary v. State*, 262 Ga. 573, 574, 577 (422 SE2d 426) (1992). Further, we note that the Supreme Court of Georgia, relying on *Gant*, recently reversed the denial of a motion to suppress evidence discovered during a pre-*Gant* incident-to-arrest search of vehicle. See *Boykins*, 290 Ga. at 73, reversing *Boykins*, 307 Ga. App. at 405, n. 3 (noting that the search of Boykins's vehicle took place on January 3, 2009, before *Gant* was issued on April 21, 2009). This Court has done so as well. See *Holsey*, 306 Ga. App. at 75 (reversing the denial of a suppression motion because the January 2009 search of the defendant's vehicle was not justified under *Gant*).

[29] The only affirmative testimony on this issue was Marion's statement that Canino was already handcuffed at the time the search began. Nevertheless, given Werho's equivocal testimony regarding the timing of the two events, we will defer to the trial court's resolution of the factual conflict and its conclusion that it is "unclear" whether Canino was handcuffed when Marion began to search the vehicle.

[30] Given the officers' undisputed testimony that Canino was in fact handcuffed when the cocaine was actually discovered, the evidence is unclear at most whether Canino was cuffed at the time the search commenced.

[31] *Boykins*, 290 Ga. at 72 (2).

[32] *Holsey*, 306 Ga. App. at 77 (1).

or inventory as a medium to search for contraband. The individual's right of privacy is superior to the power of police to impound a vehicle unnecessarily.[33]

Impoundment of a vehicle is valid only if there is some necessity for the police to take charge of the property. In each instance, the ultimate test for the validity of the police's conduct is whether, under the circumstances then confronting the police, their conduct was reasonable within the meaning of the Fourth Amendment.[34]

In *Strohbert v. State*,[35] we found an impoundment search was invalid because the vehicle was unconnected to the defendant's arrest; the vehicle was legally parked; the officer made no effort to determine whether the defendant's companion, who was present at the scene, could take possession of the vehicle; and the officer failed to give the defendant an opportunity to make arrangements alternative to impoundment.[36] We reiterated this Court's previously adopted "view that when a driver is arrested and a reliable friend is present who may be authorized and capable of removing the vehicle, or where the arrestee expresses some preference for a private towing service, the rationale for impoundment does not exist."[37]

Similarly, in *Mitchell v. State*,[38] we concluded that the State failed to demonstrate that impoundment of the defendant's car was reasonably necessary because

[t]here was no evidence of any connection between the car and appellant's arrest, no evidence that the car was illegally parked or was a hazard to traffic, or that appellant was consulted regarding alternate disposition of the vehicle. In short, there was no showing that the impoundment of the car was reasonably necessary.[39]

In *State v. Lowe*, we affirmed the suppression of evidence found in the defendant's car during an inventory search because

the misdemeanor offense for which he was arrested was in

---

[33] (Punctuation and footnotes omitted.) *State v. Carter*, 305 Ga. App. 814, 817 (2) (701 SE2d 209) (2010).

[34] (Citation and punctuation omitted.) *State v. Lowe*, 224 Ga. App. 228, 229-230 (480 SE2d 611) (1997).

[35] 165 Ga. App. 515 (301 SE2d 681) (1983).

[36] See id. at 516.

[37] Id.

[38] 178 Ga. App. 244 (342 SE2d 738) (1986).

[39] Id. at 245-246 (3).

no way related to the vehicle; the vehicle was legally parked in a safe and secure place on private property; the owner of the private property did not request that the vehicle be removed; and Lowe was not asked if there was anyone who could retrieve the vehicle.[40]

Here, although Canino was arrested for a traffic offense, his car was legally parked in a shopping center parking lot and was not creating a hazard. Further, there was no evidence that either Canino, the property owner, or the property manager requested removal of the vehicle. Canino was meeting friends at the restaurant, and at least one friend was present at the scene and spoke with one of the officers. Regardless, the officers made no effort to determine whether one of Canino's friends could take possession of the car or whether Canino wanted to make arrangements for alternate disposition. In fact, there was no evidence that Canino was ever advised that his car was being impounded. Instead, the police began searching the car immediately after Canino was advised that he was under arrest. And Canino's failure to immediately volunteer or request alternative arrangements, before he was told that his car was being impounded, does not justify the search. Under these circumstances, the State failed to establish that impoundment of Canino's vehicle was reasonably necessary, and the resulting inventory search was invalid.[41] The trial court therefore erred by denying the motion to suppress.[42]

*Judgment reversed. Ellington, C. J., and Miller, J., concur.*

DECIDED MARCH 7, 2012.

*James R. Hodes, Bruce S. Harvey*, for appellant.
*Daniel J. Porter, District Attorney, Charles P. Efstration III, Assistant District Attorney*, for appellee.

---

[40] 224 Ga. App. at 231.
[41] See *Carter*, 305 Ga. App. at 818-819 (2); *State v. Bell*, 259 Ga. App. 328, 330 (577 SE2d 39) (2003); *Lowe*, 224 Ga. App. at 231; *Mitchell*, 178 Ga. App. at 245-246 (3); *Strobhert*, 165 Ga. App. at 516.
[42] See *Mitchell*, 178 Ga. App. at 245-246 (3).