**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**December 16, 2014**

# In the Court of Appeals of Georgia

A14A2284. BROWN v. THE STATE.                                      JE-082C

ELLINGTON, Presiding Judge.

Daniel Brown stands charged with driving under the influence of alcohol to the extent that it was less safe to drive, OCGA § 40-6-391 (a) (1); driving under the influence of alcohol while having an alcohol concentration of 0.08 grams or more, OCGA § 40-6-391 (a) (5); and twelve counts of possessing a lewd depiction of a minor child in violation of OCGA § 16-12-100 (b) (8). After a hearing, the Superior Court of Athens-Clarke County denied Brown's motion to suppress evidence seized as a result of a warrantless search of his cell phone. Following our grant of his application for interlocutory review, Brown appeals, contending, inter alia, that the warrantless search of the digital contents of his cell phone violated his Fourth Amendment right to be free from unlawful searches. We agree and reverse.

"[W]here the facts relevant to a suppression motion are undisputed, . . . and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review." (Citation, punctuation and footnotes omitted.) *State v. Underwood*, 283 Ga. 498, 500 (661 SE2d 529) (2008).

Viewed in favor of the trial court's ruling,[1] the evidence shows that at 2:00 a.m. on December 30, 2012, Brown drove his vehicle into the path of oncoming traffic and forced an unmarked police car off the road. The Athens-Clarke County police officer stopped Brown's vehicle and began a DUI investigation. As the officer questioned Brown, he observed that Brown smelled of alcohol, had slurred speech, and had bloodshot, glassy eyes. Brown admitted to recently drinking alcohol. After a second officer arrived in a patrol car to assist with the traffic stop, the first officer arrested Brown for DUI and confined him in the back of the patrol car.

The second officer sat in the front seat of the patrol car, while the arresting officer continued his investigation. Brown's cell phone, which the officer had on the front seat beside him, rang several times. Brown asked the officer to answer the phone and talk to his father, but the officer simply muted the phone each time it rang.

---

[1] *Bryant v. State*, 304 Ga. App. 456, 460 (2) (696 SE2d 439) (2010).

2

The last time Brown's phone rang, the officer muted it and then opened the pictures application on the phone. The officer decided "to look through the phone to see if there was any evidence . . . that would substantiate the stop or [show Brown] previously drinking before the stop." The officer began scrolling through the photographs stored on the phone and went through ten to twelve images. After the first couple of pictures, there was a picture of a nude adult woman, and within the next few pictures the officer saw images that appeared to be child pornography.

At the hearing on Brown's motion to suppress, the officer explained his reason for opening the pictures application as follows. He testified that, in his experience, some people who are out drinking and partying use their phones to capture the moment or send text messages about what they are doing. He testified that, because of this, phones have yielded evidence in cases involving a minor in possession of alcohol. In addition, he testified that phones have contained evidence of suspects possessing guns or gang-related paraphernalia. On cross-examination, the officer admitted that he had never looked for or found evidence of DUI on an arrestee's phone. Aside from his "general experience as an officer," the officer testified he did not have "any [particular] reason to believe" that Brown had evidence on his cell phone that he had committed the offense of driving under the influence of alcohol.

3

He testified specifically that he "never saw [Brown] text on his cell phone"; "never saw him input data on his cell phone"; "never saw him take a picture" with his cell phone; and "never received any intelligence" from anyone else that there was evidence of DUI on Brown's cell phone.

Based solely on information the officer provided about images he observed on Brown's phone, a detective applied for and obtained a search warrant to look for evidence of sexual exploitation of a child on the phone. A cyber-crime and digital forensics examiner executed the search warrant and found the images that formed the basis for the 12 counts of sexual exploitation of a child. Subsequent searches of the phone with new forensic software yielded additional incriminating images and messages.

At the conclusion of the hearing, the trial court announced its decision to deny Brown's motion to suppress. The trial court determined that, under applicable law, a cell phone is a type of container that may be searched for evidence of a crime incident to a driver's arrest and that the search of Brown's phone was reasonable under the circumstances.

1. Brown contends that a warrantless search of a cell phone, even one that is seized incident to an arrest, is illegal, unless the State can show that exigent

4

circumstances made the needs of law enforcement so compelling that a warrantless search was objectively reasonable under the Fourth Amendment. This is correct.

As the Supreme Court of the United States recently declared, "the search incident to arrest exception does not apply to cell phones[;] . . . before searching a cell phone seized incident to an arrest . . . [a law enforcement officer must] get a warrant." *Riley v. California*, _ U. S. _ (IV) (134 SCt 2473, 189 LE2d 430) (2014). This is because

> [m]odern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans the privacies of life[.] The fact that technology now allows an individual to carry such information in his hand does not make the information any less worthy of the protection for which the Founders fought.

(Citation and punctuation omitted.) Id.

The holding in *Riley* does not require that every search of a cell phone be pursuant to a warrant. "[E]ven though the search incident to arrest exception does not apply to cell phones, other case-specific exceptions may still justify a warrantless search of a particular phone[,]" such as the exigent circumstances exception. Id. It is well settled that, unlike the search incident to arrest exception to the warrant

5

requirement, this exigent circumstances exception requires a court to examine the particular facts of the case to determine whether an emergency justified a warrantless search under the circumstances. Id. "Such exigencies could include the need to prevent the imminent destruction of evidence . . . , to pursue a fleeing suspect, and to assist persons who are seriously injured or are threatened with imminent injury." Id. In this case, the State did not attempt to show that the particular facts of the case demonstrated that law enforcement had an immediate necessity to search Brown's cell phone and no opportunity to obtain a warrant.[2] Thus, the officer's warrantless search of Brown's phone was therefore unconstitutional.

Moreover, the evidence seized from Brown's phone pursuant to the subsequently-issued search warrants must also be suppressed. It is undisputed that the warrants resulted directly from the illegal warrantless search. The exclusionary rule, however "prohibits introduction of . . . derivative evidence that is the product of the primary evidence" seized during an illegal search. (Citations and punctuation omitted.) *Teal v. State*, 282 Ga. 319, 323 (2) (647 SE2d 15) (2007). Where a search warrant is based upon information derived from a previous illegal search, the fruits

[2] In contrast, "there [generally are] no exigent circumstances" where, as Brown was in this case, "the driver [is] arrested, handcuffed, and the keys secured." *Hicks v. State*, 287 Ga. App. 105, 107-108 (2) (650 SE2d 767) (2007).

6

of the warranted search are tainted by the prior illegality and, unless the information supporting the warrant can be traced to an independent and lawful source, must be suppressed. *Clare v. State*, 135 Ga. App. 281, 285 (5) (217 SE2d 638) (1975).[3] All of the evidence seized from Brown's phone is therefore inadmissible under *Riley*.

2. The State contends that the outcome of this case should not depend on *Riley*, but rather whether the purpose of the exclusionary rule, that is, to deter culpable police conduct, would be served. The State contends the purpose of the exclusionary rule would not be served in this case, because the officer who searched Brown's cell phone did not act recklessly or with gross negligence and innocently relied on the case law as it existed at the time.[4] As the State asserts, the warrantless search in this

---

[3] See also *Teal v. State*, 282 Ga. at 323 (2) ("[W]hen examining the admissibility of evidence that is 'fruit of the poisonous tree,' the appropriate question is whether the evidence at issue has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint. Using this rationale, two functionally similar exceptions to the exclusionary rule – the independent source doctrine and the ultimate or inevitable discovery doctrine – have developed because the interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a worse, position than they would have been in if no police error or misconduct had occurred.") (citations and punctuation omitted).

[4] See *Davis v. United States*, _ U. S. _ (IV) (B) (2) (131 SCt 2419, 180 LE2d 285) (2011) ("[W]hen the police conduct a search in objectively reasonable reliance on binding appellate precedent, the exclusionary rule does not apply."); see also

7

case occurred before the *Riley* decision; in addition, the trial court ruled on Brown's motion to suppress without the benefit of the *Riley* decision. The State contends that, before *Riley*, the majority of state and federal courts in the United States had generally held that officers may search the contents of an arrestee's cell phone incident to a lawful custodial arrest, and that the officer was not unreasonable for failing to anticipate the shift announced in *Riley*.

The State made a similar argument in *Canino v. State*, 314 Ga. App. 633 (725 SE2d 782) (2012), contending that another Fourth Amendment decision, *Arizona v. Gant*, 556 U. S. 332 (129 SCt 1710, 173 LE2d 485) (2009), did not apply in that case because *Gant* was decided nine months after the search of the suspect's vehicle. We rejected that argument on the basis that

> [t]he Georgia Supreme Court, . . . recognizing that a state has power to impose higher standards on searches and seizures than required by the Federal Constitution if it chooses to do so, has held that the good-faith exception to the exclusionary rule[, as provided in *Davis v. United*

*United States v. Leon*, 468 U. S. 897, 925-26 (IV) (104 SCt 3405, 82 LE2d 677) (1984) (the exclusionary rule does not bar evidence obtained in a search based on reasonable reliance with a search warrant even if the warrant is later found to be invalid).

8

*States*,] is not applicable in Georgia in light of our legislatively-mandated exclusionary rule found in OCGA § 17-5-30.[5]

(Citations and punctuation omitted.) *Canino v. State*, 314 Ga. App. at 639, n.28.[6]

Likewise, in this case, the search at issue was illegal regardless whether the officer reasonably relied on existing case law.[7]

---

[5] OCGA 17-5-30 provides, in pertinent part:
(a) A defendant aggrieved by an unlawful search and seizure may move the court . . . to suppress as evidence anything so obtained on the grounds that: . . . [t]he search and seizure without a warrant was illegal[.] . . .
(b) . . . If the motion is granted the property . . . shall not be admissible in evidence against the movant in any trial.

[6] See also *Gary v. State*, 262 Ga. 573, 574 (422 SE2d 426) (1992) (holding "Georgia law precludes adoption of the *Leon* 'good-faith exception' to the exclusionary rule as part of the jurisprudence of Georgia" because, in light of the unequivocal language in OCGA § 17-5-30, ruling otherwise would amount to judicial legislation).

[7] See *Handschuh v. State*, 270 Ga. App. 676, 677-679 (1) (607 SE2d 899) (2004) (reversing a DUI conviction where the trial court's denial of a motion to suppress depended on its finding that the officer complied with the informed consent statute and, between the time of the defendant's conviction and the disposition of his direct appeal, the Supreme Court of Georgia held part of the statute was unconstitutional); *Green v. State*, 254 Ga. App. 881, 883 (1) (564 SE2d 731) (2002) (reversing defendant's conviction based on new case law holding the Confrontation Clause allows a criminal defendant to cross-examine a witness who is receiving a lesser sentence in exchange for testimony).

9

Furthermore, even if Georgia recognized the good faith exception, allowing this evidence to be admitted at Brown's trial would be inconsistent with fairness and the even-handed administration of justice.[8] In light of *Riley*, doing so would treat similarly situated defendants differently. We note, though, that this is not a matter of applying a new rule retroactively to cases "in the pipeline."[9] This is not a case where a judgment has been entered but is not yet final because it is pending on direct appeal

---

[8] *Taylor v. State*, 262 Ga. 584, 586 (3) (422 SE2d 430) (1992) ("In deciding [the] issue [of whether to apply a new rule of criminal procedure retroactively], we have been strongly influenced by considerations of fairness and the even-handed administration of justice. In order to *ensure that similarly situated defendants are treated similarly* and to maintain the integrity of the judicial process while still providing finality, we deem it appropriate to adopt the 'pipeline' approach, that is, that a new rule of criminal procedure ([in that case], the disapproval of the sequential jury charge on murder and manslaughter) will be applied to all cases then on direct review or not yet final.") (Citation and footnote omitted; emphasis added.) See also *Brockman v. State*, 292 Ga. 707, 730 (17) (739 SE2d 332) (2013) (accord).

[9] *Griffith v. Kentucky*, 479 U. S. 314, 328 (107 SCt 708, 93 LE2d 649) (1987) ("[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' from the past."); *United States v. Johnson*, 457 U. S. 537 (102 SCt 2579, 73 LE2d 202) (1982) (holding that, subject to certain exceptions, a Supreme Court decision construing the Fourth Amendment should be applied retroactively to all convictions that are not yet final).

and related proceedings[10] – no trial has taken place and no judgment of conviction has been entered. See *Holton v. State*, 173 Ga. App. 249 (326 SE2d 240) (1985) ("[A]n order denying a motion to suppress is not a final judgment[.]") (citation omitted).

Finally, even under *Hawkins v. State*, 290 Ga. 785 (723 SE2d 984) (2012), the controlling precedent at the time of the search, the search was still illegal. The rule set forth in *Hawkins* is that when a driver is arrested, the driver's cell phone may be treated in the same manner as a traditional physical container. Id. at 786. Thus, an officer may open a cell phone and search the cell phone for electronic data so long as the officer has a reasonable basis for believing that evidence relevant to the crime of arrest might be found in it. Id. As with other containers, however, the scope of a search of a cell phone incident to arrest "must be limited as much as is reasonably practicable by the object of the search." (Citation and punctuation omitted.) Id. at 788. If the search of an arrestee's cell phone constitutes a "fishing expedition," therefore, the evidence seized thereby must be excluded. Id. at 788. The Supreme Court noted that "reviewing the reasonable scope of the search will largely be a fact-

---

[10] See *Griffith v. Kentucky*, 479 U. S. 314, 328, n.6 (II) (107 SCt 708, 93 LE2d 649) (1987) (A final case is "a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied.") (citations omitted).

11

specific inquiry." Id. In *Hawkins* the officer who conducted the search arrested the defendant

> following an exchange of text messages between [the suspect] and a law enforcement officer who posed as another individual. After agreeing by text to meet the officer, ostensibly to purchase illegal drugs, [the suspect] arrived in her car at the appointed place; there, the officer observed her entering data into her cell phone, and he contemporaneously received a text message stating that she had arrived. The officer approached [the suspect's] vehicle and placed her under arrest; her vehicle was searched and her cell phone was found inside her purse. The arresting officer searched the cell phone for the [specific] text messages he had exchanged with [the suspect], and then downloaded and printed them.

Id. at 785.

Unlike *Hawkins*, the officer who searched Brown's phone did not have specific knowledge of Brown's use of his cell phone. The officer did not text with Brown prior to Brown being pulled over for DUI, did not see Brown enter any data into the phone, and did not receive any text messages from Brown at the time of arrest. Additionally, the officer did not have any particularized reason to believe Brown used his phone to take pictures that would corroborate the DUI arrest. Based on the lack of any information suggesting that Brown's cell phone contained evidence of the

12

offense of DUI, the officer's reasoning for searching the cell phone was nothing more than a "fishing expedition" and is illegal. Therefore, even without applying the holding in *Riley*, the trial court erred in refusing to suppress the evidence because the search was the very type the Supreme Court of Georgia warned about in *Hawkins*.

3. Brown also contends that two out of the three searches conducted pursuant to the search warrant were unlawful because they occurred more than ten days after the issuance of the warrant, violating OCGA § 17-5-25. For the reasons stated in Divisions 1 and 2, supra, this issue is moot.

*Judgment reversed. Phipps, C.J., and McMillian, J., concur.*