**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 27, 2018**

# In the Court of Appeals of Georgia

A18A0714. STEPHENS v. THE STATE,

BARNES, Presiding Judge.

Following his conviction for two counts of armed robbery, hijacking a motor vehicle, aggravated assault with a deadly weapon, and two counts of possession of a firearm during the commission of a felony, Carltavieus Stephens appeals from the denial of his motion for new trial. On appeal, Stephens contends that the trial court erred in allowing the State to correct peremptory strikes it had previously made during jury selection, and erred in denying his motion to suppress the information downloaded from his cell phone before obtaining a search warrant. He also contends that the trial court erred in failing to merge the two counts of armed robbery. Upon our review, we affirm Stephens's convictions, but because, as the State concedes, the trial court erred in failing to merge the two counts of armed robbery, we vacate the sentence and remand the case for resentencing.

Viewed in the light most favorable to the verdict, See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979), the evidence demonstrates that, near dusk, on January 29, 2016 the victim was finishing a contracting job at the home of a commander in the homicide division of the Atlanta Police Department, and was sitting in his truck with the dome light as he sent a text message. A young man, later identified as Stephens, approached the victim, pointed a gun at his face and told him to crank his truck. Stephens pulled the victim from the truck into the driveway, and as the two scuffled; an accomplice joined the men as they struggled for the gun. The scuffle spilled into the street, and as the victim pulled away, a third accomplice got into the truck and drove toward them. The victim ran across the street and started screaming, and Stephens and the other accomplice jumped in the bed of the truck. Stephens continued to point the gun at the victim as they drove away. According to the victim, the gunman was wearing a blue windbreaker with reddish-orange sleeves.

A neighbor who lived across the street heard the victim scream and saw the truck leave the scene with two men on the back, and one of the men was holding a gun. The homeowner later retrieved video footage of the incident from his and the neighbor's home surveillance cameras and turned the videos over to police. In the

2

video, the gunman was wearing a distinctive blue jacket with orange sleeves. A few days after the robbery, based on physical similarities with the group of robbers, the homeowner videotaped four young men walking near his home. One of the four was wearing the same distinctive shirt as the gunman captured on his home surveillance video. At trial, the homeowner identified Stephens as that person.

On February 1, 2016, as an officer was responding to calls about a vehicle break in and suspicious persons, he saw four young men, one whom he recognized as Stephens from prior encounters. The officer talked with the group, and then continued to the vehicle break-in call. The vehicle's owner provided him with surveillance video of the break-in and the officer recognized the perpetrators as the four young men he had just encountered. On February 3, 2016, the armed robbery victim identified Stephens from a six-person line-up as the person who had held him at gunpoint during the robbery. At trial, he also identified Stephens as the gunman who had robbed him. Police then obtained an arrest warrant for Stephens, and during his arrest, police recovered a pistol from his person. The pistol was not identified as the one used during the robbery, but video of Stephens with the same gun was retrieved from his cell phone, which was seized during his arrest. The video was

admitted at trial to impeach Stephen's claim in his custodial statement that he had found the gun on the day he was arrested.[1]

1. Stephens first contends that the trial court erred in permitting the State to correct peremptory strikes made during jury selection by restarting the entire jury selection process. He contends that OCGA § 15-12-166 requires that once a juror is accepted by the State, the juror must be sworn.

Although not transcribed, prior to the start of trial, the trial court established for the record that

> during the actual selection process for the jury, when the two sides were making their peremptory strikes, we reached a point at which . . . the State informed [the Court's case manager], whoops, we made a mistake, we want to undo a strike we made on one or two jurors earlier and shift things around. This request was made before anything was finalized. Like I said, we hadn't finished picking the jury. I hadn't called out any names and numbers, and the larger panel of 48 were blissfully unaware, or at least unaware of what had happened. I brought [the prosecutor] and [defense counsel] up to the bench and got a better understanding of what the request was and asked [defense counsel] if he had any concerns, and he ultimately indicated that he objected to it but agreed to defer

---

[1] The trial court acknowledged that the robbery victim described "a totally different gun," but that since the State was introducing the gun found on Stephens' person when he was arrested, the video of Stephens with the gun was "admissible to impeach what Stephens told the detective about the gun, and that's it."

4

articulating that objection until now. But he did timely object to the State's request to undo a couple of selections so that they could start out, I think it was with strike eight again. And I want the record to be as clear as I am able to make it.

The way I remedied this, over [defense counsel's] timely objection, was to undo everyone's selection. It wasn't that the State could simply swap someone out for their eight strike but [defense counsel] was returned all of his strikes that he had made, eight, nine. I don't think he had finished with the alternate yet but [defense counsel] got all of his strikes back as well. Really all that changed was we rewound a bit. [Defense counsel] had made his seventh strike and the State made a different eight strike and then we went on and finished jury selection.

At the conclusion of the trial court's summary, Stephens objected that the reset of certain peremptory strikes had permitted

the State being able to go back and make different selections not just after I had stated the Defense No. 8, I had also done Defense 8 and 9, We were getting ready to strike or select the alternate. My selections were basically the same. The State was able to – they were able to remove a certain juror and get a different juror. It's not like it's something that took place during the process and before it was passed to me and I had made a selection. They asked [the court's case manager] to get it back and to do it. We had already finished.

5

Concluding that its actions were authorized "under [its] authority to regulate how the jury selection process unfolds," the trial court overruled Stephens's objection.

OCGA § 15-12-166 provides that "[i]f a juror is found to be competent and is not challenged peremptorily by the state, he shall be put upon the accused. Unless he is challenged peremptorily by the accused, the juror shall be sworn to try the case." According to Stephens, he was prejudiced by the reset of the last peremptory strikes because the State was provided with an opportunity to revisit jurors previously identified by the defense as unacceptable. However, Stephens was not prejudiced by the court's action since he was not forced to accept an objectionable juror. See *Thompkins v. State*, 181 Ga. App. 158, 159 (2) (351 SE2d 475) (1986) ("It is well established that the system by which juries are selected does not include the right of any party to select certain jurors but to permit parties to protect themselves against prejudice by allowing them to exclude unacceptable jurors.").

Stephens does not contend that any juror was unacceptable or that he was forced to use a peremptory strike improperly, and he, in fact, acknowledges that after the reset, his juror selections were the same. Thus, "his claim of error is directed only at the procedure used, with no evidence . . . of harm resulting therefrom." (Citation and punctuation omitted.) *Cox v. State*, 293 Ga. App. 98, 102 (2) (666 SE2d 379)

6

(2008). Accordingly, we cannot say the trial court abused its discretion in denying Stephens's motion for new trial on this basis. See id. (harm as well as error must be shown to authorize a reversal by this Court).

2. Stephens contends that the trial court erred in failing to suppress the information police downloaded from his cell phone before they obtained a search warrant. Stephens asserts that the downloaded cell phone data and all fruits of that search should have been suppressed because the data was seized in violation of the Fourth Amendment.

We apply the following principles upon appellate review of a ruling on a motion to suppress:

> First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. These principles apply equally whether the trial court ruled in favor of the State or the defendant.

(Citations and punctuation omitted.) *Brown v. State*, 293 Ga. 787, 802-803 (3) (b) (2) (750 SE2d 148) (2013). When "the evidence at a suppression hearing is uncontroverted and the credibility of witnesses is not in question, we conduct a de novo review of the trial court's application of the law to the undisputed facts." (Citation omitted.) *Jones v. State*, 291 Ga. 35, 36-37 (1) (727 SE2d 456) (2012).

The uncontroverted evidence adduced at the motion to suppress hearing demonstrates that during a custodial interview, Stephens requested his cell phone, which had been seized during his arrest, from police so that he could retrieve a telephone number. The detective conducting the interview testified to the following series of events:

> Once [Stephens] unlocked his phone, got the information that he needed, the phone was recovered from [Stephens] at that point. It had not locked out, and having the open pass code at that point, . . . I took the phone down the hall to one of our investigators that's tech savvy and asked him to plug the phone in and do a phone dump, dump the information without reviewing the information and without advising me of anything if he even got anything off of the dump, that the purpose would be for me to be able to obtain a search warrant for the content of the phone. The experience we have is if the phone goes back to password protection, we're not able to get into it.

The detective testified that he wanted the contents of the cell phone downloaded because he did not want the phone to lock and that depending on the model of the cell phone, "you can't get into them without a passcode." He agreed that the majority of cell phones recovered by suspects are locked, and that they can utilize officers on the force "if we're looking for the phone dump," but for "the phone data itself we go through the phone companies. We get the call logs that way, and that is usually the majority of the data we receive." The detective testified that from past experience " if you don't have the passcode, you are probably not going to get into the phone. I saw an opportunity with the phone unlocked." The detective did not ask the officer who downloaded the contents of Stephens's cell phone if the contents could be accessed when the phone was locked, or whether it was possible to disable the lock function while the cell phone was unlocked.

After the data was downloaded, the detective obtained a search warrant permitting the search of the cell phone's contents. The cell phone contained photographs of Stephens with the gun that police recovered from Stephens's person when he was arrested. At trial, the State used the photographs to impeach Stephens's statement that he had found the gun the day of his arrest. Although Stephens was identified as the man who held the gun during the robbery, the State did not contend,

9

nor is there evidence, that the gun recovered from Stephens was the same gun used in the robbery.

Stephens filed a motion to suppress the downloaded contents, which the trial court denied. The trial court recognized that Stephens had "a right to privacy in the contents of his cell phone," and also further acknowledged that per *Riley v. California*, __ U. S. __ (134 SCt 2473, 189 LE2d 430) (2014), "the police may no longer, without a warrant, search such a phone when seized from an arrestee." The trial court, however, found that post *Riley*, "[e]xigent circumstances – such as the risk of imminent loss of data through a remote wipe of the phone – can justify a warrantless search of a seized cell phone." And, similarly, according to the trial court, police may "take steps to *preserve* the digital evidence stored in a cell phone while awaiting judicial authorization to search that evidence." The trial court held that the measure taken here by police of downloading or "dumping" the contents from Stephens's cell phone without looking at the contents, was permissible under *Riley* as a "protective step, taken solely to preserve evidence the detective reasonably believed could be destroyed."

The Supreme Court held in *Riley* that the police cannot, without a warrant, search digital information on a cell phone seized incident to arrest. *Riley*, 134 SCt at

2493. The Court reasoned that the search incident to arrest exception did not apply because neither rationale—the interest in protecting officer safety or preventing destruction of evidence—justified the warrantless search of cell phone data. Id. at 2486-88. It further noted that "[c]ell phones differ in both a quantitative and a qualitative sense from other objects that might be kept on an arrestee's person. The term 'cell phone' is itself misleading shorthand; many of these devices are in fact minicomputers . . . ." Id. at 2489. Thus, according to the Court, searches of cell phones are far more intrusive than searches prior to the "digital age," which were "limited by physical realities and tended as a general matter to constitute only a narrow intrusion on privacy." Id. "The fact that technology now allows an individual to carry such information in his hand does not make the information any less worthy of the protection for which the Founders fought," the Court noted. Id. at 2495.

However, the Supreme Court in *Riley* recognized that an exception to the search warrant requirement still "applies when 'the exigencies of the situation' make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment." *Riley*, 2494. And further that, "[s]uch exigencies could include the need to prevent the *imminent* destruction of evidence in individual cases." Id. (Emphasis supplied.) See *Arp v. State*, 327 Ga. App. 340, 345

(2) (759 SE2d 57) (2014) (an exigent circumstance generally "is the officer's reasonable belief that such action is a necessary response on his part to an emergency situation"); see also *Love v. State*, 290 Ga. App. 486, 487 (659 SE2d 835) (2008) ("An exception to the warrant requirement exists . . . where the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.") (punctuation omitted).

Here, pretermitting whether the trial court correctly found that the warrantless downloading of the contents of Stephens's cell phone was permissible under the exigencies exception to the Fourth Amendment, we hold that even if an unlawful search occurred, the evidence acquired from the downloading was admissible under the independent source doctrine. "The independent source doctrine allows admission of evidence that was discovered by means wholly independent of any constitutional violation[.] . . . When properly applied, the 'independent source' exception allows the prosecution to use evidence only if it was, in fact, obtained by fully lawful means." (Citations and punctuation omitted.) *Teal v. State*, 282 Ga. 319, 326 (2) (647 SE2d

15) (2007).[2] See *Wilder v. State*, 290 Ga. 13, 16 (2) (717 SE2d 457) (2011) (independent source "doctrine typically operates when evidence discovered as the result of an initial unlawful search is later discovered in a second search conducted by lawful means using information gained independently of the initial search").

Here, the evidence that Stephens sought to suppress was not obtained through an unconstitutional search of the contents of his cell phone, but was obtained pursuant to the later-issued search warrant.[3] Thus, even assuming that the initial downloading was an unconstitutional search, the information subject to the motion to suppress was obtained through the execution of a valid search warrant. See *United States v. Barron-Soto*, 820 F3d 409, 415-17 (11th Cir. 2016) (applying independent source doctrine where law enforcement officers conducted a warrantless search of cell phones seized from defendants and then later applied for and obtained a search warrant to search the phones).

---

[2] We recognize that we are deciding the suppression issue on grounds different from those relied on by the trial court, but our decision rests squarely on evidence adduced at the suppression hearing, and as a reviewing court, "[we] owe no deference to the trial court's conclusions of law. Instead, we are free to apply anew the legal principles to the facts." *Espinoza v. State*, 265 Ga. 171, 172 (1) (454 SE2d 765) (1995).

[3] Stephens does not contest the validity of the search warrant.

13

Despite the initial warrantless download of the contents, the video from Stephens's cell phone was acquired pursuant to a subsequent valid search warrant.[4] Moreover, the search warrant was not based upon any information derived from the download. Compare *Brown v. State*, 330 Ga. App. 488, 491 (1) (767 SE2d 299) (2014) (based on information the officer provided about images he observed during warrantless search of Brown's cell phone, detective applied for and obtained a search warrant to look for evidence of sexual exploitation of a child on the phone; thus "fruits of the warranted search [were] tainted by the prior illegality" and evidence inadmissible); *Clare v. State*, 135 Ga. App. 281, 285 (5) (217 SE2d 638) (1975) (where a search warrant is based upon information derived from a previous illegal search, the fruits of the warranted search are tainted by the prior illegality and, unless the information supporting the warrant can be traced to an independent and lawful source, must be suppressed).

---

[4] The search warrant affidavit stated, in pertinent part, that Stephens' cell phone was in his possession at the time of arrest, that it "may include information related to the identification of the other involved individuals as well as to possibly identify property taken during this armed robbery in photographs, videos and communications. . . . and any direct link to this robbery event may be included in the requested phone content."

3. Stephens contends that the trial court erred in failing to merge the two counts of armed robbery. Count one of the indictment charged Stephens with armed robbery by the use of a gun to take the victim's cell phone, and count two of the indictment charged the same, but for taking the victim's Dodge Ram.

> The doctrine of merger precludes the imposition of multiple punishments when the same conduct establishes the commission of more than one crime. Whether offenses merge is a legal question, which we review de novo. Where a single victim is robbed of multiple items in a single transaction, there is only one robbery. A defendant who takes multiple items from a victim in one transaction cannot be convicted of multiple robberies. The question is whether the thefts involve a single transaction or sequential crimes.

*Jernigan v. State*, 333 Ga. App. 339, 343 (3) (775 SE2d 791) (2015).

Here because the evidence demonstrated that the two armed robbery counts at issue were part of one single transaction, the trial court erred by failing to merge the two counts. Thus, we vacate Stephens's sentence and remand for resentencing consistent with this opinion.

*Judgment affirmed, sentence vacated and case remanded for resentencing. McMillian and Reese, JJ., concur*.