**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

June 28, 2012

# In the Court of Appeals of Georgia

A12A0106. CAPELLAN v. THE STATE.

BOGGS, Judge.

Following a bench trial, Omar Capellan was convicted of trafficking in marijuana, possession of marijuana with intent to distribute, and giving a false name and date of birth. The trial court denied Capellan's motion for new trial, and he appeals, seeking review of the trial court's denial of his motion to suppress. For the following reasons, we reverse.

"On appeal, we accept the trial court's findings on disputed facts and credibility issues unless clearly erroneous. However, where controlling facts are not in dispute, such as those facts discernible from a videotape, our review is de novo." (Citations and punctuation omitted.) *Boyd v. State*, ___ Ga. App. ___ (1) (Case No. A11A2381; decided March 12, 2012).

The facts here are undisputed. The record reveals that an officer patrolling on Interstate 85 noticed a flatbed wrecker carrying a van run onto the shoulder of the road "across the fog line approximately three times." The officer also noticed that the wrecker's New Jersey license plate was illegible because of "grease or dirt or some kind of black smudges all over the tag."

The officer stopped the wrecker and asked the driver, Capellan, for his driver's license. When Capellan stated that he did not have his driver's license, the officer asked him for his name and date of birth. Capellan told the officer "that he was 26 years old and born in 1974," and that his name was "Sammy Ba[d]away." The officer testified that he asked Capellan "a couple of more times" about his date of birth and age, because the "math didn't add up," and that Capellan "kept sticking to that he was 26 years old and born in 1974." When the officer called police dispatch to inquire about Capellan's license, the name and date of birth given by Capellan came back as "not on file." Capellan then told a second officer on the scene that his driver's license was behind the seat of his wrecker and that it might be suspended. Capellan was then arrested for giving a false name and date of birth.

When the first officer went into the cabin of the wrecker to look for Capellan's license, he smelled "a fairly strong odor of raw or green marijuana." This officer

2

testified that he was trained in marijuana recognition. The officer did not "locate any marijuana," but did locate a valid Florida driver's license and a suspended New Jersey driver's license, showing Capellan's real name and date of birth.[1]

The officer testified and the video recording reveals that after Capellan was secured in the back of the police vehicle, he began "inventorying" the wrecker and the van. The officer retrieved the keyless entry for the van from the key ring in the ignition of the wrecker, unlocked it, and opened the cargo area of the van. In the back of the van, the officer found two large duffel bags containing clear plastic bags of "a green leafy substance [the officer] suspected to be marijuana." A police department evidence technician who qualified at the bench trial as an expert in the analysis of narcotics, determined that the duffel bags found in the van contained approximately 29 pounds of marijuana. Following the hearing on the motion to suppress, the trial court denied Capellan's motion concluding that the case "presents a strong case for impoundment and inevitable discovery."

---

[1] Before his arrest, Capellan told officers that he was coming from Loganville, Georgia, was headed to Virginia, and that he had picked up the van on the back of the wrecker from Clearwater, Florida. But after he was arrested and placed in the back of the police vehicle, Capellan told officers that he picked up the van in Loganville.

On appeal, Capellan argues that the trial court erred in denying his motion to suppress because the State failed to show that the searches of the locked van and the duffel bags were lawful. Specifically, he argues that there was no evidence of a police department policy with respect to the opening of closed containers - - here the locked van and duffel bags - - encountered during the inventory search and no other exceptions to the warrant requirement exist. The State, on the other hand, asserts that the police conduct in having a lawful basis for impounding the wrecker (and the van it was carrying) was reasonable and that the marijuana in the van would have been inevitably discovered during a subsequent inventory search of the van following impoundment. Thus, impoundment, inventory, and inevitable discovery are inextricably tied here.

The first step in our analysis requires us to determine whether the "impoundment was reasonably necessary under the circumstances." *Grizzle v. State*, 310 Ga. App. 577, 579-580 (1) (713 SE2d 701) (2011). "Cases supporting the State's right to impound a vehicle incident to the arrest of a person in control of it are founded on a doctrine of necessity." (Citation, punctuation and footnote omitted.) *Dover v. State*, 307 Ga. App. 126, 128 (1) (a) (704 SE2d 235) (2010). The record shows that Capellan was the sole occupant of an out-of-state vehicle governed by the

4

Department of Transportation and required a special commercial driver's license (CDL) to drive. The wrecker was parked on an exit ramp of an interstate highway at night. The officer acknowledged that he did not offer Capellan an opportunity to make his own arrangements to remove the wrecker from the side of the highway ramp, explaining "I knew nobody would have been able to get here for a reasonable amount of time from where he was from." Based upon information available to the officer on the scene – that Capellen's only valid driver's license was issued in the state of Florida, that the van was being moved from Florida to Virginia, the New Jersey license plates on the wrecker, and the need for the holder of a CDL to drive the wrecker – the officer's decision to impound the wrecker was entirely reasonable. See *Wiley v. State*, 274 Ga. App. 60, 61 (1) (616 SE2d 832) (2005) (impoundment reasonable where U-Haul truck stopped at night created potential hazard and driver had suspended license); *Colzie v. State*, 257 Ga. App. 691, 692 (2) (572 SE2d 43) (2002).

Having determined that impoundment of the vehicle was reasonably necessary, we must now determine whether the officer's search of the van, following Capellan's arrest, was a valid inventory search.[2]

> The United States Supreme Court has held that an inventory search may be "reasonable" under the Fourth Amendment even though it is not conducted pursuant to a warrant based upon probable cause. In this respect, an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence, but instead the policy or practice governing inventory searches should be designed to produce an inventory. Pursuant to these principles, . . . the first purpose of an inventory search is the protection of the owner's property while it remains in police custody and the second purpose is the protection of the police against claims or disputes over lost or stolen property. And . . . this Court recognized that taking an inventory of the contents in a closed container in the trunk of a vehicle serves both of these purposes.

(Citations and punctuation omitted.) *Grizzle*, supra, 310 Ga. App. at 580 (2). "[I]nventories conducted by the police pursuant to standard police procedures are deemed to be reasonable under the Fourth Amendment." (Citation, punctuation and footnote omitted.) Id.; see also *Colorado v. Bertine*, 479 U. S. 367, 374 n.6 (107 SC

---

[2]We note that our courts have held that an inventory may be conducted at the scene of arrest or at the police station. See *Carson v. State*, 241 Ga. 622, 623 (1) (247 SE2d 68) (1978).

6

738, 93 LE2d 739) (1987). In *Clay v. State*, 290 Ga. 822 (725 SE2d 260) (2012), the Georgia Supreme Court noted "that the inventory of containers must be in accordance with established inventory procedures." (Citation and punctuation omitted.) Id. at 830 (2) (A). Accord *Florida v. Wells*, 495 U. S. 1, 4-5 (110 SC 1632; 109 LEd 2d 1) (1990) (affirming decision to suppress search based upon absence of evidence of policy to open closed containers during inventory search).

In this case, Capellan argues that the inventory search of the locked van and the duffle bags inside it was not proper in the absence of evidence of the police department's policy on inventory searches. The record contains no evidence about the police department's policy or procedures on inventory searches. Rather, both officers simply testified that their searches of the wrecker, van, and its contents were inventory searches pursuant to the impoundment. The police department may well have had such a reasonable inventory procedure. However, there is no evidence in the record to establish the existence of such a policy or procedure. Without evidence of such policy it is difficult, if not impossible, to conclude that the inventory was conducted pursuant to such policy and not simply a "rummaging" to discover incriminating evidence. The inventory search here was therefore unreasonable under the Fourth Amendment. See *Wells*, supra; compare *Grizzle*, supra, 310 Ga. App. at

7

580 (2) (State presented evidence of police department policy regarding inventories and officer who conducted inventory testified that he did so according to that policy).

The State asserts that we should nonetheless uphold the search under the doctrine of inevitable discovery. This assertion also fails, however, based upon the lack of evidence about the police department's inventory policy. *Clay*, supra, 290 Ga. at 830 (2) (A) (rejecting claim of inevitable discovery based upon lack of evidence regarding routine inventory procedures).

Because the inventory search here was unreasonable because of a lack of evidence of police policy, the trial court erred in denying Capellan's motion to suppress. We are therefore constrained to reverse.

*Judgment reversed. Doyle, P. J. and Andrews, J., concur.*