**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 13, 2013**

# In the Court of Appeals of Georgia

A13A1332. SHAW v. THE STATE.

ANDREWS, Presiding Judge.

Dustin Wade Shaw was indicted for one count of felony possession of marijuana with the intent to distribute (OCGA § 16-13-30 (j)) and one count of misdemeanor possession of drug related objects (OCGA § 16-13-32.2). The trial court denied Shaw's motion to suppress the evidence taken from the glove compartment of his vehicle, two baggies of marijuana and a set of digital scales, but granted an immediate review of that ruling. We granted Shaw's motion for an interlocutory appeal. On appeal, Shaw contends that the denial of his motion to suppress was error because the trial court's finding that the impoundment and inventory search of his

vehicle was clearly erroneous, foreclosing the applicability of the inevitable discovery rule.[1] We agree and reverse.

> When reviewing a trial court's order on a motion to suppress, the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Footnote omitted.) *Canino v. State*, 314 Ga. App. 633 (725 SE2d 782) (2012).

So construed, the relevant facts show that while on patrol on April 19, 2012, Officer Joseph William David of the City of Elberton Police Department stopped Shaw because he knew that Shaw had an outstanding warrant against him. After verifying the warrant, David arrested Shaw and placed him in the back of his patrol

---

[1] "The purpose of the inevitable discovery rule [is] to block setting aside convictions that would have been obtained without police misconduct. . . ." (Citation and punctuation omitted.) *Teal v. State*, 282 Ga. 319, 324 (2), n. 2 (647 SE2d 15) (2007).

2

car. Upon determining that Shaw's passenger also had a contempt warrant pending against him, David arrested the passenger as well and placed him in the back of a second police vehicle which had been driven to the scene by a backup police officer. David testified that immediately after both subjects had been placed in the patrol cars, he searched Shaw's vehicle incident to their arrests and found the evidence set out above in the glove box. At an undetermined time later that night, David listed such items as taken from the vehicle on a department inventory form pursuant to departmental policy and procedure. In other testimony, David indicated that the officers attempted to contact someone to take the vehicle, but called for a tow truck when they got no response.

On cross-examination, David testified that the stop occurred at 10:38 p.m.; that Shaw was compliant and aware of the warrant which was related to a family violence issue; that he did not expect to find anything related to Shaw's warrant in the vehicle; and that he had no reason to believe that a criminal act had been committed or was about to be committed in the car. The trial court entered a stipulation that at 10:45 p.m., a department dispatcher advised David by radio that Shaw's mother was en route to get the car; and at 10:55 p.m. and 11:02 p.m., respectively, the two officers

left the scene. It is undisputed that the vehicle was towed at some point following the incident and picked up the next day by members of Shaw's family.

The record shows that the trial court denied Shaw's motion to suppress citing *Humphreys v. State*, 287 Ga. 63, 77 (7) (694 SE2d 316) (2010). Apparently persuaded that the inevitable discovery rule was applicable, the trial court found as fact that "the police officer took custody of the vehicle, called to have it towed and[,] for his and the department's protection, he inventoried the vehicle which is standard procedure so that they don't get accused of stealing something or misplacing something."

Quite to the contrary, nothing of record shows that the police impounded and inventoried Shaw's vehicle for his protection or that of the department. Rather, the evidence shows only that David searched the vehicle incident to Shaw's arrest, not incident to its impoundment. As the State concedes, there was no justification for the "arm's reach" search which David undertook immediately after arresting and securing Shaw and his passenger. See *Arizona v. Gant*, 556 U. S. 332, 335 (129 SCt 1710, 173 LE2d 485) (2009) ("[*New York v. Belton*, 453 U. S. 454 (101 SCt 2860, 69 LE2d 768) (1981)] does not authorize a vehicle search incident to a recent occupant's arrest after the arrestee has been secured and cannot access the interior of the vehicle."). There is no evidence that Shaw's vehicle was parked in a manner which might have

4

presented a hazard to traffic or that he was given an opportunity to make alternative arrangements for the disposition of his vehicle. Moreover, no evidence shows that David completed his department's standard inventory form listing the items he seized from the vehicle in connection with the impoundment of the vehicle. "The state may inventory the contents of a car that has been lawfully impounded. *Sams v. State*, 265 Ga. 534, 535 (3) (459 SE2d 551) (1995). The test is whether, under the circumstances, the officer's conduct in impounding the vehicle was reasonable within the meaning of the Fourth Amendment. *Wright v. State*, 276 Ga. 454, 461 (5) (579 SE2d 214) (2003)." *Humphreys*, supra, 287 Ga. at 77 (7).

In *Humphreys*, the Supreme Court held that the inventory search and impoundment of the Jeep at issue were "entirely reasonable and the evidence seized during the search was properly admitted." (Citation omitted.) Id. Inapposite to those in this case, the facts supporting the Supreme Court's decision in *Humphreys* were that "the vehicle was clearly connected to Humphreys's arrest; it was a rental vehicle in which Humphreys had been the sole occupant; and it was unsafe to drive, illegally and dangerously parked, and a hazard to traffic. . . ." Id.; compare, e.g., *Strobhert v. State*, 165 Ga. App. 515 (301 SE2d 681) (1983); *State v. Lowe*, 224 Ga. App. 228, 231 (480 SE2d 611) (1997) (impoundment search invalid because vehicle was

5

unconnected to the defendant's arrest, not parked in a hazardous manner, and defendant not given opportunity to arrange for alternative disposition thereof).

Further, the evidence shows that David and his backup officer left the scene at 10:55 p.m. and 11:02 p.m., respectively, in effect, impounding Shaw's vehicle within 17 minutes of the time they were notified by radio that his mother was en route. While we have approved as reasonable impoundments occurring in comparably short time periods, we did so finding that we could not determine as a matter of law that departmental policies to such effect were unreasonable. There also was evidence in those cases that the persons en route to pick up the vehicles were 35 to 90 minutes away. See *Carlisle v. State*, 278 Ga. App. 528, 530 (629 SE2d 512) (2006) ("20 minutes was not unreasonable"); *Gooden v. State*, 196 Ga. App. 295, 296-297 (395 SE2d 634) (1990) (15 minutes was not unreasonable). There is no evidence of a departmental towing policy in this case. Neither is there any evidence showing that Shaw's mother's estimated time of arrival was other than near term.

Given the foregoing, the State failed to establish that impoundment of Shaw's vehicle was reasonably necessary as a matter of fact, and the trial court's finding to the contrary was clearly erroneous. *Canino*, supra, 314 Ga. App. at 641 (3). The purported inventory search, therefore, was invalid, and the inevitable discovery rule

6

is inapplicable. See *Teal*, supra, 282 Ga. at 324 (2), n. 2. Accordingly, the trial court erred by denying the motion to suppress, and reversal is required.

*Judgment reversed. Dillard and McMillian, JJ., concur.*