**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**February 6, 2014**

# In the Court of Appeals of Georgia

A13A2451. ARMSTRONG v. THE STATE.

ANDREWS, Presiding Judge.

After a bench trial on evidence stipulated to by the prosecution and the defense, Charles Christopher Armstrong was found guilty of trafficking in methamphetamine in violation of OCGA § 16-13-31 (e); possession of a controlled substance (oxycodone) in violation of OCGA § 16-13-30 (a); possession of a controlled substance (less than one ounce of marijuana) in violation of OCGA §§ 16-13-30 (j) and 16-13-2 (b); and driving while his license was suspended in violation of OCGA § 40-5-121. On appeal Armstrong contends: (1) that the trial court erred by denying his pre-trial motion to suppress evidence found by police during a warrantless inventory search of his impounded car; and (2) that the evidence was insufficient to

support the guilty verdict. We find that the trial court correctly denied the motion to suppress and that the evidence was sufficient to support the guilty verdict.

1. As to the motion to suppress, Armstrong's contention on appeal and in the trial court was that: (1) it was not reasonably necessary for police to impound the car, therefore police had no basis to conduct the warrantless inventory search of the car pursuant to the impoundment, and (2) the warrantless search was an illegal investigatory search conducted under the guise of an inventory search.

The following undisputed evidence was produced at the hearing on the motion to suppress and at the bench trial: A Gwinnett County police officer stopped the car driven by Armstrong because a computer check by the officer on the car's license plate showed that the car's registration had been cancelled. The officer made the stop when Armstrong turned the car into a gas station and parked in front of a gas pump. During the stop, Armstrong initially gave the officer a false name and a fake driver's license. The sole passenger in the car also gave the officer false identification information. After determining Armstrong's true name, additional computer checks conducted during the stop showed that Armstrong's driver's license was suspended, and that both Armstrong and the passenger had outstanding arrest warrants. The officer placed Armstrong and the passenger under arrest. After the gas station

operator informed the officer that the car was blocking the gas pump and could not be left at the gas station, the officer made the decision to impound the car and tow it. Pursuant to police department procedures, the officer immediately conducted a warrantless inventory search of the impounded car. During the inventory search, the officer found a backpack in the rear passenger seat which contained various controlled substances which the State used as evidence to support the charges brought against Armstrong.

After lawfully impounding a vehicle, it is reasonable under the Fourth Amendment for police to conduct a warrantless, non-investigatory search of the vehicle, pursuant to standard police procedures, to produce an inventory of the vehicle's contents to protect the owner's property, or to protect police from potential danger or claims for lost or stolen property. *Stringer v. State*, 285 Ga. App. 599, 601-603 (647 SE2d 310) (2007); *Grizzle v. State*, 310 Ga. App. 577, 579 (713 SE2d 701) (2011). Thus, "[j]ustification for an inventory search is premised upon the validity of the impoundment of the vehicle." *Stringer*, 285 Ga. App. at 602. The test under the Fourth Amendment "is whether the impoundment was reasonably necessary under the circumstances, not whether it was absolutely necessary." *Grizzle*, 310 Ga. App. at 579 (citation and punctuation omitted). In the present case, the trial court found that the

3

impoundment was reasonably necessary because the car's registration had been cancelled, the driver and the sole passenger were under arrest, and the owner of the private property where the car was stopped did not want the car to remain on the property. Because the unregistered car could not be lawfully driven, and could not remain where it was located, the trial court's finding that the impoundment was reasonably necessary was supported by the evidence and will not be disturbed on appeal. Id. at 578-580. Contrary to Armstrong's contention, the officer was not required under these circumstances to ask him what he wanted done with the car prior to impounding it. *Scott v. State*, 316 Ga. App. 341, 343-344 (729 SE2d 481) (2012).

Armstrong also contends that the warrantless search violated the Fourth Amendment because the officer admitted prior to the search that he suspected the car may contain contraband. Thus, Armstrong contends that the officer conducted an illegal investigatory search without a warrant under the guise of an inventory search.

> The Fourth Amendment does not permit police officers to disguise warrantless, investigative searches as inventory searches. However, [police are not required to demonstrate] an absence of expectation of finding criminal evidence as a prerequisite to a lawful inventory search. When officers, following standardized inventory procedures, seize, impound, and search a car in circumstances that suggest a probability of discovering criminal evidence, the officers will inevitably be motivated in part by criminal investigative objectives. Such motivation, however,

4

cannot reasonably disqualify an inventory search that is performed under standardized procedures for legitimate custodial purposes.

*United States v. Lopez*, 547 F3d 364, 372 (2d Cir. 2008) (citations and punctuation omitted). Because evidence showed that the impoundment of the car was lawful and that the search was conducted in good faith pursuant to standard police department procedure for a valid inventory purpose, the trial court's denial of the motion to suppress was supported by the evidence and will be affirmed on appeal. *Grizzle*, 310 Ga. App. at 580.

2. The evidence was sufficient to support the trial court's verdict finding Armstrong guilty of the charged offenses.

Evidence stipulated to by the prosecution and the defense showed the following: Armstrong was driving a car (which was also occupied by a passenger in the front passenger seat) when a police officer stopped the car for a cancelled registration. During the stop, the officer placed Armstrong under arrest because he gave the officer a false name and a fake driver's license and was subject to an outstanding arrest warrant. The passenger was also arrested for giving false information during the stop and for being subject to an outstanding arrest warrant. Police impounded the car and conducted an inventory search of the car. During the

5

search, the officer found a backpack in the rear passenger seat which contained clear crystals, ten pills, green leafy material, and a paper copy of the fake license that Armstrong gave to the officer. The State Crime Lab tested the crystals and the pills – the crystals tested positive for methamphetamine weighing more than 28 grams, and the pills tested positive for oxycodone. A police department crime scene specialist conducted tests on the leafy material which tested positive for marijuana weighing less than one ounce. Evidence also showed that Armstrong had received prior notice that his driver's license was suspended. Finally, although Armstrong stipulated to evidence at the bench trial that a copy of the fake license he gave to the officer was found in the backpack, he disputed that evidence when he testified at trial that the copy of the fake license was in his wallet, not in the backpack, and that he had no knowledge of the backpack. Armstrong also testified at the trial that the passenger had no knowledge of the backpack or drugs in the backpack.

Evidence showed that Armstrong was driving the car in which the backpack containing the contraband was located on the rear seat; that the sole passenger had no knowledge of the backpack; and that Armstrong was linked to the backpack by his control of the car and evidence that the backpack contained a copy of the fake driver's license he gave to the officer. The evidence, direct and circumstantial, was

6

sufficient for a rational trier of fact to find beyond a reasonable doubt: (1) that Armstrong knowingly had both the power and intention to exercise dominion or control over the controlled substances (methamphetamine, oxycodone, and marijuana) found in the backpack, and that he was in constructive possession of those substances (*Reyes v. State*, 322 Ga. App. 496, 497-498 (745 SE2d 738) (2013); OCGA §§ 16-13-31 (e); 16-13-30 (a); 16-13-30 (j); 16-13-2 (b)) and (2) that Armstrong knowingly drove the car while his license to drive was suspended (OCGA § 40-5-121). *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Dillard and McMillian, JJ., concur.*