**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**February 27, 2015**

# In the Court of Appeals of Georgia

A14A1942. DAVIS v. THE STATE.                                         DO-071 C

DOYLE, Presiding Judge.

Preston Davis was charged with possession of marijuana with the intent to distribute,[1] obstruction of a police officer,[2] driving without proof of insurance,[3] and improper use of the center lane.[4] He appeals the denial of his motion to suppress, arguing that the impoundment of his vehicle and subsequent inventory search were unlawful. For the reasons that follow, we affirm.

When reviewing a trial court's ruling on a motion to suppress,

---

[1] OCGA § 16-13-30 (j) (1).

[2] OCGA § 16-10-24 (a).

[3] OCGA § 40-6-10 (a) (1.2).

[4] OCGA § 40-6-126.

this Court must be guided by three fundamental precepts: first, when a motion to suppress is heard by the trial judge sitting as the trier of fact, the judge hears the evidence and the judge's findings on conflicting evidence are analogous to a jury verdict, and consequently, should not be disturbed by the appellate court if there is any evidence to support them; second, the trial court's decisions on questions of fact and credibility are to be accepted unless they are clearly erroneous; and third, the appellate court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. Such precepts are equally applicable whether the trial court rules in favor of the State or the defendant.[5]

So viewed, the record shows that on September 18, 2013, at approximately 10:00 p.m., an Athens-Clarke County police officer observed a 2002 Audi, which Davis was driving, turn out of an apartment complex and travel more than 300 feet in the center turn lane. While following Davis, the officer ran the Audi's license plate through the computer and determined that the car was not insured. After confirming with dispatch that the vehicle did not have valid insurance, the officer activated his blue lights, and Davis pulled over to the side of the road near an overpass.

---

[5] (Citations omitted.) *State v. Colvard*, ___ Ga. ___, ___ (1) (Case No. S14A1347, decided Jan. 20, 2015).

When the officer informed Davis that his computer reflected that Davis's vehicle was not covered by insurance, Davis produced a binder from his insurance agent showing that insurance on the vehicle took effect on August 14, 2013. According to the officer, the paperwork showed that the policy provided coverage for 30 days, and the 30 days had already expired.[6] Davis then produced an insurance card with a policy for a separate vehicle and advised that it reflected "the policy number under which the Audi should be covered." In an effort to verify coverage, the officer called an after-hours number for the insurance company and was told by the operator that the policy for that particular vehicle could not be located.[7]

The officer then called for a wrecker to tow the vehicle and began an inventory search at the front of Davis's car. When the officer leaned down to activate the trunk latch, Davis fled on foot. After pursuing him, the officer returned to the vehicle and

[6] The insurance paperwork was left in Davis's vehicle, and it was not introduced at the suppression hearing.

[7] The representative was able to locate Davis's name associated with another vehicle for which Davis did have insurance.

3

discovered in the trunk "in plain view" a plastic grocery bag containing marijuana, $2,275 in small denomination bills, bags, and rolling paper.[8]

Following his arrest, Davis moved to suppress the evidence, arguing that the traffic stop, impoundment, and inventory search of his car were unlawful. At the suppression hearing, Davis's insurance agent testified that Davis had valid insurance at the time of the stop and that the after-hours operator, who was not local, would not necessarily have access to this information. The agent conceded, however, that

> for whatever reason, . . . the database that shows in the tag office that someone has insurance and [State Farm] [in]putting in that policy did not sync up. So after that 30-day binder expired, it appeared as though there was no insurance in the database even though there was.

The State Farm agent also testified that the insurance binder Davis showed the officer "would not indicate valid insurance after the 30 days."

Davis elicited testimony from the officer that his sole training with respect to conducting an inventory search was to fill out a form listing items to be noted. The officer also testified, however, that police department policy required that before having vehicles towed, officers conduct an inventory search to look for "the spare

---

[8] The officer testified the he smelled the odor of marijuana immediately after opening the trunk.

tire, the jack, stereo and audio player, any special equipment, [and] the glove compartment, and any damaged parts need to be noted, and anything other – special or anything remarks that need to be made."

The trial court denied the motion to suppress, finding that "[t]he police officer had a reasonable and articulable suspicion to stop the vehicle and was authorized to conduct an inventory search of the vehicle." Davis obtained a certificate of immediate review, and this Court granted his application for an interlocutory appeal. On appeal, Davis argues that the impoundment of his vehicle and subsequent inventory search were unlawful. We disagree.

Davis does not challenge the officer's decision to initiate a traffic stop. Instead, he argues that there was no lawful reason for the impoundment because although the database the officer checked indicated that Davis's vehicle was not insured, the printed materials Davis provided demonstrated proof of coverage. This argument overlooks his insurance agent's testimony that the binder had expired and would not show valid proof of coverage 30 days after issuance. Under these circumstances, the

officer's decision to prohibit Davis from driving his car was not improper.[9] The next question, therefore, is whether the impoundment of the vehicle was proper.[10]

It is well settled that "[c]ases supporting the State's right to impound a vehicle . . . are founded on a doctrine of necessity."[11]

---

[9] See *Grizzle v. State*, 310 Ga. App. 577, 579-580 (1), n. 8 (713 SE2d 701) (2011) (absent proof that motorcyle was insured, it "could not be lawfully driven by anyone"); *Dover v. State*, 307 Ga. App. 126, 128 (1) (a) (704 SE2d 235) (2010) ("the vehicle was not insured, so it could not be driven"). We note that the State does not argue that police searched the car incident to Davis's arrest, and there was no evidence that Officer Choudhery placed Davis under arrest before he fled the scene. See OCGA § 40-6-10 (a) (6) ("If a law enforcement officer of this [S]tate determines that the owner or operator of a motor vehicle subject to the provisions of this Code section does not have proof or evidence of required minimum insurance coverage, the arresting officer *shall issue a uniform traffic citation* for operating a motor vehicle without proof of insurance. If the court or arresting officer determines that the operator is not the owner, then a uniform traffic citation may be issued to the owner for authorizing the operation of a motor vehicle without proof of insurance.") (emphasis supplied). But see OCGA § 17-4-23 (a) (arrest by issuance of citation).

[10] We note that impoundment was not proper under OCGA § 40-6-206 (d), which provides that "[b]ecause uninsured vehicles pose a threat to the public safety and health," law enforcement officers may impound a vehicle when a person is charged with OCGA § 40-6-10 (a) or (b) "if such person admits to the law enforcement officer that there is no insurance in effect on the vehicle or if the law enforcement officer verifies that the proof of insurance provided by such person is fraudulent." "Neither of these conditions was present, so [the officer] lacked authority to impound the vehicle under OCGA § 40-6-206 (d)." *State v. Lamb*, 202 Ga. App. 69, 71 (2) (413 SE2d 511) (1991) (physical precedent only).

[11] (Punctuation omitted.) *Dover*, 307 Ga. App. at 128 (1) (a) (discussing necessity of impoundment in light of driver's arrest).

Under that doctrine, while the police may not impound a car to search for contraband, they may impound a vehicle if they must take charge of it for some reason. And ultimately, the test for the validity of the police's conduct is whether, under the circumstances then confronting the police, their conduct was reasonable within the meaning of the Fourth Amendment. More specifically, the test is whether the impoundment was reasonably necessary under the circumstances, not whether it was absolutely necessary. Furthermore, subsequent to a reasonable impoundment, the contents of an impounded vehicle are routinely inventoried to protect the property of the owner, protect the officers against claims for lost or stolen property, and protect the police from potential danger. Finally, inventories conducted by the police pursuant to standard police procedures are deemed to be reasonable under the Fourth Amendment.[12]

Here, Davis's car was parked on the side of a major road late at night, and because there was no proof that the vehicle was insured, towing it was the only viable option for removing it from the roadway. And there is no evidence that Davis expressed a preference for a towing company. Under these circumstances, the trial court did not err by finding that impoundment was reasonably necessary.[13]

---

[12] (Footnotes and punctuation omitted.) *Grizzle*, 310 Ga. App. at 579 (1).

[13] See *Beville v. State*, 322 Ga. App. 673, 677 (3) (b) (745 SE2d 858) (2013); *Staley v. State*, 224 Ga. App. 806, 807 (1) (482 SE2d 459) (1997) ("Given the lack of proof that the truck was insured, [the defendant's] inability to drive the truck due

Davis also argues that the inventory search was invalid because there was no evidence that it was conducted pursuant to an established police department policy. He relies upon *Capellan v. State*,[14] in which this Court held that a police inventory search was unreasonable because, given the lack of evidence of police department policy on inventory searches or a reasonable inventory procedure, "it is difficult, if not impossible, to conclude that the inventory was conducted pursuant to such policy and not simply a 'rummaging' to discover incriminating evidence."[15]

Here, there was evidence that Athens-Clarke County Police Department policy required an inventory search of all vehicles prior to towing in order to provide a list

_____

to his suspended license, the fact that the truck was sitting in the lane of travel on the roadway, and [the defendant's] failure to make any request regarding a wrecker service, it was not unreasonable under the Fourth Amendment and the circumstances facing [the officer] at the time for him to call a wrecker and have the truck impounded."). But see *State v. Darabaris*, 159 Ga. App. 121, 123 (282 SE2d 744) (1981) (impoundment not reasonably necessary because the police did not ask the owner, who although under arrest, was present, if he had a preference regarding which towing service to use). Here, Davis does not argue that the officer had an obligation to permit Davis to select his own towing service, nor does he otherwise challenge the officer's summoning of a tow truck once he made the decision to have the car towed; instead, Davis limits his argument to the allegedly conflicting evidence regarding whether there was proof that the vehicle was insured.

[14] 316 Ga. App. 467 (729 SE2d 602) (2012).

[15] Id. at 470.

of valuables, damage to the vehicle, or other notable issues or items, and that the officer was trained in how to complete the inventory form. Thus, the trial court did not err by concluding that the officer's decision to search Davis's car was proper.[16]

*Judgment affirmed. Miller and Dillard, JJ., concur*.

---

[16] See *Askew v. State*, 326 Ga. App. 859, 863 (755 SE2d 283) (2014); *Grizzle*, 310 Ga. App. at 580-581 (2); *Staley*, 224 Ga. App. at 808 (1). Compare *Capellan*, 316 Ga. App. at 470. And having concluded that the inventory search of the trunk was proper, we reject Davis's argument that the trial court erred by denying the motion to suppress the items found in the plastic grocery bag because there was no evidence of a specific policy regarding opening closed containers during an inventory search. Based upon the officer's testimony that he smelled marijuana as soon as the trunk was opened, the police were authorized to open the bag. See *Jones v. State*, 319 Ga. App. 678, 678-679 (1) (738 SE2d 130) (2013).