**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 1, 2018**

# In the Court of Appeals of Georgia

A17A1679. STROUD v. THE STATE.

BRANCH, Judge.

Following a jury trial, Kelly Stroud was convicted in Spalding County Superior Court of a single count each of possession of cocaine, failure to maintain lane, and driving with a suspended license. Stroud now appeals from the denial of his motion for a new trial, arguing that the evidence was insufficient to sustain his conviction for failure to maintain lane. Additionally, Stroud asserts that the trial court erred in denying his motion to suppress and in refusing to give his requested jury instructions on equal access and circumstantial evidence. For reasons explained more fully below, we affirm Stroud's conviction for driving with a suspended license. We reverse, however, Stroud's conviction for failure to maintain lane, finding that the evidence was insufficient to support that conviction. We further find that in denying Stroud's

motion to suppress, the trial court failed to determine whether the impoundment of Stroud's car was reasonably necessary under the circumstances. Accordingly, we vacate the order denying the motion to suppress and remand for further proceedings on the same. Finally, we find that the trial court committed plain error when it failed to give Stroud's requested charge on circumstantial evidence and for that reason, we reverse the trial court's denial of Stroud's motion for a new trial on the charge of possession of cocaine.

"On appeal from a criminal conviction, the defendant is no longer entitled to a presumption of innocence and we therefore construe the evidence in the light most favorable to the jury's guilty verdict." *Marriott v. State*, 320 Ga. App. 58, 58 (739 SE2d 68) (2013) (citation omitted). So viewed, the record shows that late on the evening of March 9, 2009, a patrol officer with the City of Griffin Police Department observed a car driven by Stroud traveling west on Broad Street. As the officer watched, the car "made a wide right turn onto 14th Street, heading northbound" and crossed into "the southbound lane of 14th Street." The officer conducted a traffic stop of Stroud based on his alleged failure to maintain his lane. When the officer ran an identification check on Stroud, he learned that Stroud's driver's license had been suspended. Upon learning of the suspended license, the officer immediately arrested

2

Stroud, handcuffed Stroud's hands behind his back, and placed Stroud in the back of the officer's patrol car. The officer then conducted a search of Stroud's car and found a glass pipe of the type used to smoke crack cocaine and two small pieces of an off-white substance located in between the driver's seat and the car's center console. Subsequent forensic tests showed the off-white substance to be cocaine with a weight of approximately .06 grams.

Stroud moved to suppress the items seized from his car, arguing that their discovery resulted from an illegal search. At the hearing on the motion to suppress, which was held immediately before trial, the arresting officer testified that the search of Stroud's vehicle was not performed incident to his arrest, but instead was performed because police had to impound the car. The officer further explained that an impound was necessary because Stroud, the car's sole occupant, lacked a valid license and therefore could not drive the car. The officer, however, provided no explanation for why the car had to be removed from the scene immediately — i.e., there was no evidence that the car was illegally or dangerously parked or that it was a hazard to traffic. When questioned about whether Stroud had been given the opportunity to call someone to retrieve the car from the scene, the officer responded that he did not speak with Stroud about that possibility, but that a second officer was

present and he might have had that discussion with Stroud, but the arresting officer could not remember.

The arresting officer also testified that he could not remember whether he searched the car before or after he had called for a tow truck, and he acknowledged the search might have occurred before he began the impound process. The State introduced into evidence the inventory sheet made as part of the car's impoundment, but neither the cocaine nor the crack pipe were listed on that sheet.[1] The arresting officer indicated that he did not personally fill out the impound inventory sheet, and the sheet reflects that someone other than the arresting officer signed it on behalf of the police department. Additionally, the arresting officer could not say at what point after he seized the contraband the remainder of the car's contents were inventoried and the form completed.

Based on this evidence, the trial court denied the motion to suppress, finding that because Stroud was being arrested, the law required that the car be impounded and its contents inventoried. Immediately following that ruling, the case proceeded to trial, at which the arresting officer gave testimony that was substantially similar to

---

[1] The items listed on the inventory sheet were a portable CD player and "12 keys on a keychain."

4

that given at the motion to suppress hearing, with one exception. At trial, the officer testified that the second officer at the scene "tried to get someone [to retrieve the car for Stroud, but] no one was available to get the vehicle [,] [so] we impounded the vehicle."[2]

Stroud testified in his own defense and admitted that he had been driving with a suspended license. Stroud also claimed that neither the pipe nor the cocaine belonged to him and that he was unaware those items were in his car. According to Stroud, because he was currently unemployed, he used his car to give people rides in exchange for cash. Just before the traffic stop, Stroud had dropped off a passenger, whom he could identify only as a white female. Based on Stroud's testimony as well as the testimony of the arresting officer, who acknowledged that the contraband was located in an area of the car accessible to passengers, Stroud requested a jury charge on equal access. Over Stroud's objection, the trial court declined to give this charge, finding that it did not apply because there were no other passengers present in Stroud's car at the time of the traffic stop.

---

[2] This unidentified second officer did not testify at either the motion to suppress hearing or at trial.

The trial court also declined to give Stroud's requested jury charge on circumstantial evidence, which was based on what was then OCGA § 24-4-6. In explaining this refusal, the trial court stated that the principles contained in the requested charge would be covered by the court's standard charge on circumstantial evidence.

The jury found Stroud guilty on all counts and the trial court sentenced him to 15 years for possession of cocaine and 12 months on each charge of driving with a suspended license and failure to maintain lane, with all sentences to run consecutively. Following his conviction Stroud filed a motion for a new trial, which was denied. This appeal followed.[3]

[3] Stroud was convicted and sentenced in October 2009 and his motion for new trial was filed that same month. When no trial transcript had been filed after 17 months, Stroud's attorney filed three separate motions between March 23 and November 28, 2011, seeking copies of that transcript. Over two years after the new trial motion was filed, a hearing on that motion was scheduled for December 14, 2011, but was continued until January 30, 2012, based on the lack of the trial transcript. The trial court denied the motion for a new trial immediately following the January 30 hearing, and Stroud timely filed his first notice of appeal. This Court subsequently remanded the case in April 2012 because of the absence of a transcript from the hearing on the motion for new trial. Following a second hearing, Stroud's new trial motion was again denied in November 2012. Stroud's attorney filed an untimely notice of appeal in January 2012, and it does not appear that the case was transmitted to this Court for docketing. In July 2015, Stroud's new counsel filed a motion for an out-of-time appeal, which the trial court granted on August 20, 2015. Stroud filed a second notice of appeal the following day. Approximately two years

6

1. Although Stroud has not challenged his conviction for driving with a suspended license, we note that the evidence set forth above, including Stroud's admission that his license had been suspended, supports his conviction for that crime. See *Wilson v. State*, 278 Ga. App. 420, 421 (629 SE2d 110) (2006) ("to establish the offense of driving with a suspended license, the State must show that the accused was driving, that his license was suspended, and that the accused had received actual or legal notice of the suspension") (punctuation and footnote omitted); OCGA § 40-5-121 (a). We therefore affirm Stroud's conviction for driving with a suspended license.

2. Stroud contends that the evidence was insufficient to sustain his conviction for failure to maintain lane. We agree.

Stroud was charged with a violation of OCGA § 40-6-48, which provides, in relevant part, that "[w]henever any roadway has been divided into two or more clearly marked lanes for traffic . . . [a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." OCGA § 40-6-48 (1).

---

later, in May 2017, the Clerk of the Spalding County Superior Court transmitted the record to this Court, and the current appeal was docketed. We trust that on remand, the trial court will be cognizant of the more than eight-year delay suffered by Stroud in having his claims of error heard and will, to the extent possible, expedite further proceedings in this case.

Thus, to convict a defendant of violating this statute, the State must prove that the road on which the defendant was driving at the time of the alleged violation was, in fact, "divided into two or more clearly marked lanes for traffic." See *Stewart v. State*, 288 Ga. App. 735, 738 (3) (655 SE2d 328) (2007) (punctuation omitted). Here, given that no evidence was presented to establish that 14th Street was "divided into two or more clearly marked lanes," the evidence was insufficient to convict Stroud of failure to maintain lane. Id.

In an effort to avoid this result, the State cites *Moore v. State*, 234 Ga. App. 332 (506 SE2d 685) (1998), where this Court summarily held that an "arresting officer's testimony that he observed [the defendant] weave across the road was sufficient to sustain the conviction for lane violations under OCGA § 40-6-48." Id. at 333 (3) (d). *Moore*, however, did not address whether the State had proved that the roadway in question was divided into clearly marked lanes. Accordingly, *Moore* did not establish binding precedent with respect to that question. See *State v. Outen*, 289 Ga. 579, 582 (714 SE2d 581) (2011) (although the question at issue may have been before the court in previous cases, those cases did not directly address the question and therefore "no binding precedent was established") (citation and punctuation omitted); *Abreu v. State*, 206 Ga. App. 361, 363 (2) (425 SE2d 331) (1992) (same).

8

See also *Gordy Tire Co. v. Dayton Rubber Co.*, 216 Ga. 83, 89 (1) (114 SE2d 529) (1960) ("[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents") (citations and punctuation omitted). This case is instead controlled by *Stewart*, which requires that we reverse Stroud's conviction for failure to maintain lane.

3. Stroud contends that the trial court erred in denying his motion to suppress the contraband found in his car because the search of that vehicle violated the Fourth Amendment.

> At a hearing on a motion to suppress, the trial judge sits as the trier of fact. On appeal from the grant or denial of such a motion, therefore, this Court must construe the evidence most favorably to uphold the findings and judgment of the trial court, and that court's findings as to disputed facts and credibility must be adopted unless clearly erroneous. However, we owe no deference to the trial court's conclusions of law and are instead free to apply anew the legal principles to the facts.

*Watts v. State*, 334 Ga. App. 770, 771 (780 SE2d 431) (2015) (citation and punctuation omitted).

"On a motion to suppress, the State bears the burden of proving that the search at issue did not violate the Fourth Amendment." *Watts*, 334 Ga. App. At 775 (1)

9

(citation omitted). To carry its burden in this case, the State was required to show that the warrantless search of Stroud's car was justified. Police officers may conduct a warrantless search of a vehicle without violating the Fourth Amendment in two situations. The first is where the search is conducted incident to the arrest of the driver and/or the car's occupants. See *Grimes v. State*, 303 Ga. App. 808, 812 (1) (b) (695 SE2d 294) (2010). The search-incident-to-arrest exception applies only to those situations where "the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search," or where "it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Arizona v. Gant*, 556 U. S. 332, 343 (III) (129 SCt 1710, 173 LE2d 485) (2009) (citation and punctuation omitted). And as a general rule, in cases where "a recent occupant [of the vehicle] is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence."[4] Id. at 343-344 (III) (citations omitted) (holding the search of defendant's car incident to his arrest for driving without a license violated the Fourth Amendment because "police could not expect

---

[4] The State does not contend that the search in this case falls within the search-incident-to-arrest exception to the Fourth Amendment. Instead, the State argues that the search was legal under the impound-inventory exception, discussed infra.

to find evidence [related to that crime] in the passenger compartment of [the] car"). Id. at 344 (III) (citation omitted).

The second situation where police may conduct a warrantless search of a car arises where the police have impounded the vehicle and, as part of the impoundment process, they take an inventory of the car's contents. *Grimes*, 303 Ga. App. at 812 (1) (b). Under the impound-inventory exception, where officers have a reasonable basis for impounding the car, the Fourth Amendment allows

> police to conduct a warrantless, non-investigatory search of the vehicle, pursuant to standard police procedures, to produce an inventory of the vehicle's contents to protect the owner's property, or to protect police from potential danger or claims for lost or stolen property. *Thus, justification for an inventory search is premised upon the validity of the impoundment of the vehicle*.

*Armstrong v. State*, 325 Ga. App. 690, 691 (1) (754 SE2d 652) (2014) (citations and punctuation omitted; emphasis supplied). "Impoundment of a vehicle is valid only if there is some necessity for the police to take charge of the property," and police "may not use an impoundment or inventory as a medium to search for contraband." *Canino v. State*, 314 Ga. App. 633, 639-640 (3) (725 SE2d 782) (2012) (punctuation and footnote omitted). See also *Fortson v. State*, 262 Ga. 3, 4 (1) (412 SE2d 833) (1992)

11

(holding that police must have a valid justification for impounding a vehicle, as they may not use an inventory search as a pretext for an investigatory search). Thus, "to determine whether an inventory search was authorized, [a court] must first determine whether the impoundment was reasonably necessary under the circumstances." *Scott v. State*, 316 Ga. App. 341, 343 (729 SE2d 481) (2012). "The test is whether, under the circumstances, the officer's conduct in impounding the vehicle was reasonable within the meaning of the Fourth Amendment." *Humphreys v. State*, 287 Ga. 63, 77 (7) (694 SE2d 316) (2010) (citation omitted). See also *Scott*, 316 Ga. App. at 343 ("[t]he test is whether the impoundment was reasonably necessary under the circumstances, not whether it was absolutely necessary") (citation and punctuation omitted).

Reasonable necessity for impounding a defendant's vehicle has been found where the car is an out-of-state rental vehicle, *Humphreys*, 287 Ga. at 77 (7); the car cannot be safely or legally driven, id.; see also *Davis v. State*, 331 Ga. App. 171, 174 (769 SE2d 183) (2015); *Ahmad v. State*, 312 Ga. App. 703, 706 (1) (719 SE2d 563) (2011); *Bell v. State*, 302 Ga. App. 519, 520 (691 SE2d 573) (2010); the car is illegally or dangerously parked, *Davis*, 331 Ga. App. at 174; *Armstrong*, 325 Ga. App. at 691 (1); or the car is connected to a crime for which the defendant is arrested.

12

*Humphreys*, 287 Ga. at 77 (7); *Grizzle v. State*, 310 Ga. App. 577, 579 (1) (713 SE2d 701) (2011). Cf. *Canino*, 314 Ga. App. at 641 (3) (State failed to establish that impoundment was reasonably necessary where car was unconnected to defendant's arrest for a traffic offense, car was legally parked, and officers "made no effort to determine whether one of [defendant's] friends could take possession of the car or whether [defendant] wanted to make arrangements for alternate disposition"); *State v. Bell*, 259 Ga. App. 328, 330 (577 SE2d 39) (2003) (same); *State v. Lowe*, 224 Ga. App. 228, 230 (480 SE2d 611) (1997) (same); *Strobhert v. State*, 165 Ga. App. 515, 515 (301 SE2d 681) (1983) (same, and noting that although defendant ultimately may have been unable to make alternate arrangements for his vehicle, "the crucial fact . . . is that the arresting officer made absolutely no effort to explore the possible alternatives").

At the conclusion of the motion to suppress hearing, defense counsel moved for a directed verdict in Stroud's favor on the ground that the State had failed to carry its burden to show the search was illegal. The trial court denied both that motion and the motion to suppress, ruling that because Stroud's car was being impounded, an inventory search of the vehicle was legally required. Notably, although the crucial inquiry on this motion to suppress was whether the impoundment of Stroud's car was

13

reasonably necessary under the circumstances, the trial court did not address this question. Given the trial court's failure to address the question necessary to decide the motion to suppress, we vacate the denial of that motion and remand for further proceedings on the same. On remand, the trial court should not only determine whether the impoundment of Stroud's car was reasonably necessary under the circumstances, it should also make any factual and credibility findings necessary to support its conclusion. See *Watts*, 334 Ga. App. at 780 (1) (b) (reversing denial of motion to suppress and remanding for determination of factual questions necessary to decide that motion).

Additionally, we note that much of the evidence presented at the motion to suppress hearing — including the testimony of the arresting officer — conflicted with the same officer's assertion that the contraband was discovered during an inventory search of Stroud's vehicle. Instead, that evidence indicated that the cocaine was seized during a search of Stroud's car performed incident to his arrest. On remand, therefore, the trial court should also make factual and credibility findings to support its conclusion that the discovery of the contraband occurred during an inventory search. See *Shaw v. State*, 324 Ga. App. 670, 671-672 (751 SE2d 478) (2013) (finding that no evidence supported the conclusion that contraband was discovered

14

during an inventory search, as opposed to a search incident to arrest, where search was conducted "immediately after" the defendant was arrested and secured and there was "no evidence" that defendant's vehicle was parked illegally or hazardously or that the arresting officer "completed his department's standard inventory form listing the items he seized from the vehicle in connection with [its] impoundment").

4. Stroud's opening brief asserted that the trial court erred in denying his requested jury instruction on equal access. In his reply brief, however, Stroud concedes that the trial court's refusal to give the equal access charge was appropriate because the trial court did not instruct the jury on presumption of possession. See *State v. Johnson*, 280 Ga. 511, 513 (630 SE2d 377) (2006) ("a charge on equal access is appropriate to counter a jury instruction on presumption of possession, and is not necessary otherwise"). Accordingly, Stroud has abandoned this enumeration of error.

5. Stroud filed a written request to charge the jury on the language of what was then OCGA § 24-4-6, which provides, "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the

15

accused."[5] The trial court refused to give the requested charge, stating that circumstantial evidence would be "covered" by the charges the court planned to give. Although the trial court did charge the jury on circumstantial evidence, that charge did not encompass the language or principles found in former OCGA § 24-4-6.[6] As he did in his motion for a new trial, Stroud contends on appeal that the trial court's refusal to give his requested charge constitutes reversible error. We agree.

Because Stroud failed to object to the jury charge given at trial, we must decide whether the refusal to give the requested charge constitutes plain error. See *State v. Kelly*, 290 Ga. 29, 32 (1) (718 SE2d 232) (2011). Under the plain error standard, we

---

[5] This exact language is now codified in Georgia's current evidence code at OCGA § 24-14-6.

[6] The trial court gave the following charge on circumstantial evidence:

[E]vidence may be either direct or circumstantial or both. Direct evidence is evidence that points immediately to the question at issue. Evidence may also be . . . proved by a fact by inference. This is referred to as circumstantial evidence.
Circumstantial evidence is the proof of facts or circumstances by direct evidence from which you may infer other related or connected facts that are reasonable and justified in the light of your experience.
The comparative weight of circumstantial evidence and direct evidence on any given issue is a question of fact for you, the jury, to decide.

16

must first determine whether there is an error that has not been affirmatively waived. Id. at 33 (2) (a). If such an error exists, we must then determine whether that error was plain and obvious, "whether it likely affected the outcome of the proceedings," and whether "the error seriously affect[ed] the fairness, integrity or public reputation of the proceedings below." Id. (citations and punctuation omitted).

Here, given that Stroud made a written request for the jury charge at issue, he has not affirmatively waived any error resulting from the trial court's refusal to give that charge. See *Durham v. State*, 292 Ga. 239, 241 (3) (734 SE2d 377) (2012). Additionally, in 1994, the Supreme Court of Georgia established a bright-line rule requiring a trial court to charge the jury on former OCGA § 24-4-6 when the State introduces both direct and circumstantial evidence against the defendant and the defendant requests such a charge. *Mims v. State*, 264 Ga. 271, 272-273 (443 SE2d 845) (1994). See also *Davis v. State*, 285 Ga. 176, 180 (674 SE2d 879) (2009) ("if the case relies to any degree upon circumstantial evidence, a charge on [former OCGA § 24-4-6] is required upon written request") (citation, punctuation and emphasis omitted). Given this well-established law, we must conclude that the trial court's refusal to give the requested charge constitutes plain and obvious error. *Stanbury v. State*, 299 Ga. 125, 129-130 (2) (786 SE2d 672) (2016) ("[f]or an error to be obvious

17

for purposes of plain error review, it must be plain under controlling precedent or in view of the unequivocally clear words of a statute or rule*") (citation and punctuation omitted). See also *Durham*, 292 Ga. at 241 (3) (trial court's refusal to give the requested charge on circumstantial evidence constituted plain and obvious error in light of well-established precedent).

In determining whether this error likely affected the outcome of the proceedings, we note that the State's case against Stroud for possession of cocaine was entirely circumstantial. Specifically, the evidence of possession consisted of the circumstance that the contraband was found in Stroud's car.[7] Given that the evidence against Stroud was not overwhelming and that Stroud offered in his defense what the jury might have viewed as a reasonable hypothesis supporting his innocence, we find

---

[7] The record shows that a note sent out by the jury during its deliberations contained a series of questions indicating that jurors had some concern about the lack of direct evidence against Stroud. The jury asked:

> Where exactly in the car was the pipe [and] cocaine found — 'between seats' or 'between the console [and] driver's seat? Why was there no drug test done [on defendant] after drugs were found in car? Why were fingerprints not taken [from] crack pipe?

that this error likely affected the outcome of the proceedings. "Indeed, under all the circumstances of this case, the trial court adversely affected [Stroud's] 'substantial rights' by failing to provide the required [circumstantial evidence] charge because the charges as given failed to provide the jury with the proper guidelines for determining [Stroud's] guilt or innocence." *Stanbury*, 299 Ga. at 131 (2) (citation, punctuation and emphasis omitted). See also *Davis*, 285 Ga. at 180 (2) (trial court's refusal to give a requested jury charge on OCGA § 24-4-6 constituted harmful error where the State relied primarily on circumstantial evidence and the direct evidence against the defendant was not "overwhelming"); *Butler v. State*, 298 Ga. App. 129, 130 (1) (679 SE2d 361) (2009) (same).

We also find that the trial court's refusal to give the requested charge seriously affected the fairness and integrity of the judicial proceedings below. This conclusion is based not only on the obvious nature of the error, but also on the fact that the error both lessened the State's burden and usurped, to some degree, the function of the jury. As former OCGA § 24-4-6 reflects, where a case depends to any extent on circumstantial evidence, the State bears the burden of coming forward with sufficient evidence to exclude every reasonable hypothesis other than the accused's guilt. And whether the State has met this burden is for the jury to determine — i.e., the jury must

19

decide whether there is a reasonable hypothesis that supports the accused's innocence. See *Julius v. State*, 286 Ga. 413, 415 (1) (687 SE2d 828) (2010); *Stewart*, 288 Ga. App. at 737 (2). Here, however, as the instruction was not given, the jury did not know that the State was required to exclude every reasonable hypothesis other than the accused's guilt and that the jury was required to determine whether such a hypothesis existed. Accordingly, we find that the trial court's refusal to give Stroud's requested charge on former OCGA § 24-4-6 constitutes plain error. See *State v. Alvarez*, 299 Ga. 213, 215 (790 SE2d 66) (2016) (the trial court's "failure to instruct the jury that the State had the burden of disproving [defendant's] justification defense" likely affected the outcome and fairness of the trial); *Stanbury*, 299 Ga. at 131 (2) (where only evidence of defendant's involvement in the crime was accomplice testimony, trial court's failure to give an accomplice corroboration instruction "seriously affected the fairness, integrity, or public reputation of the [trial]," as the absence of such a charge meant that "an accused would have no way of knowing whether the jury secured his conviction through permissible means") (citation and punctuation omitted). We therefore reverse the denial of Stroud's motion for a new trial on the charge of possession of cocaine.

For the reasons set forth above, we affirm Stroud's conviction for driving with a suspended license and we reverse his conviction for failure to maintain lane. Additionally, we vacate the order of the trial court denying Stroud's motion to suppress and remand for further proceedings on that motion consistent with this opinion. Finally, we reverse the order of the trial court denying Stroud's motion for a new trial on the charge of possession of cocaine.

*Judgment affirmed in part, reversed in part, vacated in part, and case remanded with direction. McFadden, P. J., and Bethel, J., concur.*